The judgment is reversed and the cause remanded.

.Reversed and remanded.

FRANCIS BACON v. CORNELIUS O'CONNOR.

Though a purchaser of real estate has certain information of a particular defect in the title which he proposes to purchase, if he pursues a proper inquiry into the truth of such information, and ascertains facts which would satisfy a prudent man that such defect does not in point of fact exist, he will be a purchaser in good faith.

Otherwise, however, where a party has notice of such facts as would lead to a discovery of the truth, upon proper inquiry, and stops short in his inquiry of that point to which a prudent man under the circumstances would go.

Where, pending negotiations for, and before the consummation of a sale of real estate, a third party denying the validity of the vendor's title, and interested in subjecting it to the payment of the debts of a previous owner, through whom the vendor derived her title, had cautioned the public against buying the same, stating that the title was in dispute, and had also notified the proposed purchaser in effect that he would contest the title, and that the person proposing to sell had acquired no valid title to the property as against his claim to subject it to the payment of his debts;—held, that such third party was not under obligation to be at all times ready to explain his objections to the title; and if, in attempting to do so, he, without intending to conceal anything, omitted to state every

fact which would show that his objections were well founded, he will not be estopped thereby, in a contest with the purchaser as to the title to the property, from impeaching its validity by showing facts which he had before omitted, or was unable to state.

Especially is this proposition correct when it does not appear that the party was not called upon to state all his objections to the title, nor was informed that the proposed purchaser would act upon the facts which he might disclose.

See the facts of this case for circumstances which reasonably put the purchaser upon inquiry as to the particular defects of the title which he proposed to purchase, and which did not entitle him to claim to be a purchaser in good faith.

APPEAL from Galveston. Tried below before the Hon. Peter W. Gray.

This was a suit brought on the 15th day of April, 1857, by Cornelius O'Connor against Francis Bacon and the administrator of John O'Connor's estate, for the purpose of subjecting to sale certain lots in the city of Galveston purchased by the defendant Bacon from Gormley and wife, and by them conveyed to him, said Bacon, by deed, on the 8th day of October, 1856. The plaintiff alleged that he was surety for John O'Connor on a note for the sum of $1180 80, given for the purchase money of a tract of land containing 1476 acres; that suit had been brought thereon, a judgment recovered against them, the land sold under an execution issued thereon, at 15 cents per acre, and the judgment credited with $212 14, after deducting costs. That he had paid the balance remaining due under execution.

The plaintiff also alleged that John O'Connor, on the 20th day of February, 1855, made a voluntary conveyance, without consideration, to Ann Duffy, of said lots, and a certain negro man, the same being all the property owned by him. That the conveyance was null and void as against his creditors; that said Ann was a young woman in indigent circumstances, unmarried, and without means; that John O'Connor was addressing her with the hope of making her his wife. That Ann Duffy having in the meantime married Peter Gormley, conveyed with her said husband the lots to the defendant—the latter having had notice before he purchased of the facts stated, and particularly that the convey-

ance from John O'Connor was without consideration, fraudulent and void as to creditors.

He prayed, therefore, to be subrogated to the rights of the administrator of Fessenden's estate, in whose favor the judgment had been rendered, and that the lots aforesaid be sold to indemnify him for the amount paid by him.

The defendant, Bacon, relied on his purchase having been made in good faith, without notice of defect of title, and for a full and adequate consideration. The deed from John O'Connor was recorded in the county clerk's office of Galveston county, on the 27th day of March, 1855.

The testimony strongly conduced to prove that, at that time and before, Ann Duffy was in humble circumstances, and without means to make such purchase. The conversations between the plaintiff and the witness, Dr. Hurlbut, (the friend of the defendant, referred to in the opinion,) were related to the defendant before the purchase. That witness stated that he did not hear Cornelius O'Connor intimate that there was any want of consideration in the conveyance from John O'Connor to Ann Duffy previous to the sale by her and her husband to Bacon. Nor did it appear from the testimony that Bacon knew of such want of consideration. Dr. Hurlbut stated that he never heard of any objection to the title to the lots until the publication made by Cornelius O'Connor in the newspaper, which induced him to call on O'Connor in regard to the matter. The question, which appears to have been submitted to attorneys for their opinion before the purchase by Bacon, was whether the lots were subject to the judgment against John and Cornelius O'Connor, they having been conveyed to Ann Duffy previous to the rendition thereof. The counsel who gave the opinion examined the records in the County and District Courts, and reported to Bacon that the title was good as against Cornelius O'Connor, as stated by the latter to Hurlbut, and was in all other respects perfect on the records. The other facts sufficiently appear in the statement of the case in the opinion.

The court charged the jury among other matters, as follows:

"On the third issue, as to notice to Bacon: although the

deeds to John O'Connor, and from him to Ann Duffy were on record, and showed no legal defect in her title, and the presumption was in favor of the validity of her title, on which a purchaser having no notice or knowledge of a defect in it might rely and act, yet if actual notice of the defect was given by plaintiff, and received by Bacon; or if he received such information from plaintiff or from Beisner before plaintiff paid the debt, concerning the lots, and of their being liable to the judgment against O'Connor, as would put a prudent man, using ordinary business diligence, on inquiry about it; and of such a nature as would, by the use of such diligence, have led him to a knowledge of the facts and defects. in the title, before he made the purchase and paid his money, then he would be bound by such notice, as if he did know the facts, and would hold the property subject to the plaintiff's claim, which was not of such a character that it could be recorded.

"If, then, from the evidence, you believe that the plaintiff was surety for John O'Connor in the debt and judgment to Beisner, and that he was compelled to pay the balance due on the judgment, as alleged; that the deed from John O'Connor to Ann Duffy was made without consideration, and with intent to hinder or delay, or defraud his creditors, or to screen the property from the debt to Beisner; and that the defendant, Bacon, before or at the time of his purchase had actual notice that the plaintiff claimed that the lots were liable. to pay the judgment, and received such information about the nature of his claim, either from the plaintiff or Beisner, as put him on inquiry about it, and as might have led him to a knowledge of the character of the deed from John O'Connor to Ann Duffy, by using such diligence as a prudent man might and should have done, then you will find for the plaintiff against both defendants; but if you believe otherwise from the evidence on either point stated, then find for defendant Bacon, against the plaintiff."

The defendant Bacon asked the court, among other things, to instruct the jury that "when a purchaser is in negotiation for the purchase of property held by the vendor under a regular chain of recorded title, the notice requisite to put such purchaser on in-

quiry, into an outstanding lien or equity, must specify the nature of the defect of the recorded title with sufficient certainty to apprise the purchaser of the fact to which his inquiries are to be directed, and to enable him to conduct those inquiries to a successful termination;" which the court refused, as partly inapplicable as asked, and covered by the general charge.

The court refused to give certain other instructions asked to be given by the defendant Bacon, and also others asked by the plaintiff, and as a substitute for them gave the following additional charge: "If you believe from the evidence that before Bacon completed the purchase of the lots in question, Hurlbut related to him (Bacon,) the substance of the conversation which he had had with plaintiff, then Bacon would not be an innocent purchaser, unless from the evidence you believe that he could not by further inquiry of persons who knew John O'Connor and Ann Duffy, have learned the nature of the transaction between them; or unless you believe from the evidence that the inquiries of Hurlbut were so made of plaintiff as to put him on his guard that his answers would be taken as a statement of the entire nature of his claim, and he intentionally concealed such information as he had about the character of the deed from O'Connor to Ann Duffy, and thereby misled Hurlbut and Bacon, so as to prevent further inquiries."

The defendant Bacon excepted to the charges given, and to the refusal to give those asked by him.

Verdict of the jury for the plaintiff, and decree rendered accordingly by declaring the conveyance to Bacon null and void, so far as the same affected the plaintiff for the purposes of his suit, but valid and effectual as to John O'Connor, his heirs and representatives. It was further decreed that the plaintiff be subrogated to the rights of Charles L. Beisner, administrator of Isaac Fessenden, deceased, in the judgment aforesaid, and that a sufficient portion of the lots aforesaid be sold in the manner prescribed by law for sales under execution, to pay the amount of $1102 96, with interest thereon from the 14th day of June, 1856, until paid, and that any balance from said sale, after payment to the plaintiff, be paid over to the defendant Bacon.

*Sherwood & Goddard,* for the appellant.—In the purchase of real estate, if there be an outstanding claim and the purchaser has notice of the claim and facts upon which such claim is founded, or if he has sufficient notice to put him on inquiry into the facts upon which such claim rests, and those facts are either pointed out to him, or knowledge of them attainable by ordinary diligence, the purchaser will not be protected in his purchase, if it turn out that the claim be well established. The above is conceived to be the true rule and the utmost extent to which it has been carried. This general rule is quite well defined by the adjudicated cases.

The case of Barnes v. McClinton, 3 Penn. Rep., 69, has perhaps gone farther than any other in the books in determining what may be constructive notice. That was a case where notice was given at a sheriff's sale by Fetterman, the agent, "that the heirs of Barnes had a claim to the land." The purchaser disregarded the notice and instituted no inquiry. The court held that the notice was sufficient to put the party on inquiry, under the circumstances. The court say, "if, indeed, no accessible source of information were known or pointed out, that might make a difference. But Mr. Fetterman was on the spot to answer all questions." It is easy to perceive why, in this case, the purchaser was charged with constructive notice.

In the case of Jones v. Smith, 1st Philips' Eng. Ch. Rep., 244 to '53, cited also in the text in Dart on Vendors and Purchasers of Real Estate, p. 411, it is held, "that when the purchaser is informed of the existence of an instrument which may, but does not necessarily affect the property, and he is assured that the instrument does not affect that property but relates to other property, and he, acting fairly and honestly, believes such statement; and it turns out that he is misled and that the instrument does relate to the property, he will not be fixed with notice." This case illustrates that the question is always one of good faith in the purchaser where he is not charged with record notice. It also establishes that the information, counsel, advice, or assurances of others acting on the mind of the purchaser, should have their due influence in proving the fairness of his motives, notwithstanding such advice and assurances might be erroneous.

Bacon v. O'Connor.

The motives to diligence which actuate a purchaser in examining into a title, and those which influence a person ·seeking to set aside a conveyance, are very different.    The one proceeds upon the presumption that the recorded title is fair ; that the consideration mentioned in the title deeds was paid by the vendee and received by the vendor, and gives as full faith to the recitals in recorded deeds as the law attaches to them when it makes the record constructive notice of their contents.   Hence it is that the purchaser resorts to the ordinary and accessible means of information within his reach.    On the other hand, the party seeking to set aside a recorded conveyance, starts with the presumption that it is unfair, and admits none of the incidents that would seem to give it validity.    The most extraordinary diligence, attended with astute and persevering inquiry through every possible means of information, however remote, is resorted to.    In the one case the motive is to make a fair examination into the title ;  in the other, to fish up and arrange the ingredients necessary to sustain a law suit.    In view of these considerations, the rule of diligence required of a purchaser  has been well declared in 1st Philips' Eng. Ch. R., 257, to this effect :

" As a general rule, the mere omission to make those inquiries which a prudent, cautious, wary person would ordinarily make, is not in itself, sufficient to fix a *bona fide* purchaser with notice of what he might have ascertained by making such inquiry." (See also Dart on Vendors, 411.)

In the case of the Attorney General v. Backhouse, 17 Vesey, 293, Lord Eldon, in speaking of constructive notice and the extent to which the purchaser of a lease was bound to prosecute his inquiries, says :

" Though the purchaser of a lease has never been considered a purchaser for a valuable consideration without notice to the extent of not being bound to know from whom the lessor derived his title, I am not aware of any case that has gone the length that he is to take notice of all the circumstances under which the lessor derived that title.    These parties must be understood at least to have notice that the lessors were trustees of a charity ; but I cannot go the length that the purchaser had notice that this was a bad lease ;

that depending upon a number of circumstances *dehors* the lease."

There must be some reasonable rule and course of adjudications in relation to the sale and purchase of that vast amount of property, always held under titles more or less affected with suspicions of invalidity. Were it otherwise, and were the purchaser to be visited with a defect of title, where hearsay, vague rumor, or indefinite suspicion had reached him before purchase, the effect would be to tie up and disable from alienation much property, or effectually to destroy its value. It has, therefore, been virtually established by decisions repeatedly made, that purchasers must, in some degree, be permitted to act under a fair influence in determining the validity of a title to which suspicion may have attached. If the conclusion to which he arrives is entirely free from the imputation of unconscientious judgment, his estate will not be periled by an honest mistake of the facts. Were it not so, we should see practically exhibited that havoc of estates which Lord Eldon, in the 11th of Vesey, mentions as certain to result from an arbitrary rule, such as would carry constructive notice to an irrational extent. Accordingly it has been held, " that where circumstances are brought home to the purchaser which would have been sufficient to put him on inquiry, and thus amount to notice, he may rebut the presumption of notice by showing the existence of other attendant circumstances of a nature to allay his suspicions, and lead him to suppose that inquiry was not necessary, (2 White & Tudor's Lead. Cas. in Eq., part 1, page 114; Jones v. Smith. 1 Han., 60; 8 N. Hamp. Rep., 264; 2 White & Tudor's Lead. Cas. in Eq., part 1, page 106.)

In accordance with the above doctrine it has been held in South Carolina, " that notice of a claim by a third person will not affect a purchaser for a valuable consideration, if the title purchased appears to be valid, and there is no good reason to suppose the adverse claim well founded." (Hughson v. Mandeville, 4 Des., 87.)

The notice of a claim to a purchaser for a valuable consideration, must be such as to charge such person with the imputation of fraud in making his purchase. In Jolland v. Strainbridge, 3 Vesey, 484, the Master of the Rolls remarks :

"I must admit now that the registry is not conclusive evidence; but it is equally clear that it must be satisfactorily proved that the person who registered the subsequent deed must have known exactly the situation of the persons having the prior deed; and, knowing that, registered in order to defraud them of the title he knew was in them." * * * He further says: "I regret that the statute has been broken in upon by parol evidence, and am very glad to find that Lord Hardwick, in Hine v. Dodd, says nothing short of actual fraud will do."

In referring to the doctrine laid down in the above case, Chancellor Kent, in his Commentaries, says: "The doctrine of notice, and its operation in favor of the prior unregistered deed, or mortgage, equally applies, however, as I apprehend, throughout the United States; and it everywhere turns on a question of fraud and the evidence requisite to infer it. In pursuance of that principle, and in order to support, at the same time, the policy and injunctions of the registry acts in all their vigor and genuine meaning, implied notice may be equally effectual with direct and positive notice; but, then, it must not be that notice which is barely sufficient to put a party on inquiry. Suspicion of notice is not sufficient. The inference of a fraudulent intent affecting the conscience, must be founded on clear and strong circumstances, in the absence of actual notice. The inference must be necessary and unquestionable." (4 Kent's Com., 171–2; 1 Story's Eq., p. 429, § 400.)

Everything material, necessary to charge Bacon with notice, seems to have been kept entirely out of view. Had it been communicated to Bacon, his agent, or counsel, that the deed to Mrs. Gormly, or Ann Duffey, was without consideration, or that it was a contemplated marriage settlement; or that the deed was made to defraud creditors, so as, in any manner, to show the conveyance void or voidable, it is to be presumed that he would not have made the purchase. There is not a particle of evidence in the record showing that these questions, by way of notice, were ever raised before Bacon's purchase. Dr. Hurlbut, in his several conversations, and Mr. Merriman, in his conversation with O'Connor, state distinctly that O'Connor never pretended or intimated that there

was any want of consideration or defect in the consideration of the deed to Mrs. Gormly; nor is there any evidence in the record that anything material, by way of notice, was brought to Bacon's knowledge before he was served with the petition.

It is insisted in this case that O'Connor brought himself within the rule established as between claimant and purchaser, where the claimant is bound by his own statement, or by his neglect to state the facts on which his claim is founded. If, for instance, a claimant stands by at a sheriff's sale and makes no claim to the property sold; or should make a claim, and connect it with a statement of facts from which it appeared that his claim had no foundation, the purchaser would acquire a good title as against the claimant, and the claimant would be estopped from afterwards setting up either a claim that he had not insisted on, or a claim resting for its foundation upon a different state of facts than that disclosed. This rule, it is believed, is imperative, and has its origin in necessity, in order to prevent imposition and fraud.

In the case of Argenbright v. Campbell and wife, (3 Hen. & Mun., 170,) the court says: " For as the land was offered for sale by the proprietor, although the complainant, by a public advertisement, had warned all persons from purchasing, that warning was not sufficient to attach notice to a purchaser who had personally applied for information of the nature of the complainant's claim, and been refused satisfactory information in respect to it, or who had received information of a claim substantially different in its nature from that which constituted his real claim."

In this case, it will be observed that it was virtually held by the court that the complainant had destroyed the effect of his published notice (if it was good for anything) by his own statements and conduct. It is deemed unnecessary to multiply authorities in support of a principle so well established. They all rest, for their foundation, upon the principle that "the law is solicitous to prevent all kinds of imposition and injury from confidence reposed in the acts or conduct of others." It is, therefore, an established doctrine that a person shall not be permitted to claim adversely to a right acquired by another, where, by his

Bacon v. O'Connor.

own act or conduct, either of omission or commission, he has assisted or influenced such other person in the acquisition of his right.

*O. C. & R. K. Hartley,* for the appellee.

BELL, J.—It is shown by the record that John O'Connor purchased from the estate of one Fessenden, a tract of land situated in Colorado county, and that the appellee, Cornelius O'Connor, became the surety of John O'Connor upon a promissory note executed to the administrator of Fessenden's estate, for the purchase money. This debt to Fessenden's estate became due on the 4th of April, 1855; suit was commenced by Fessenden's administrator, against John O'Connor and Cornelius O'Connor, for the recovery of this debt, on the 6th of November, 1855; judgment was obtained by Fessenden's administrator on the 14th of June, 1856; an order for the sale of the land in Colorado county issued on the 11th day of July, 1856, and the land was sold, in pursuance of the order, on the first Tuesday in September, 1856; an execution then issued, directed to the sheriff of Galveston county, for the purpose of collecting what remained due on the judgment after the sale of the land in Colorado county. This execution was levied on the property of Cornelius O'Connor; Cornelius O'Connor paid the balance due to the estate of Fessenden. The testimony shows that, on the 20th day of February, 1855, the lots in controversy in this suit were conveyed by John O'Connor to Ann Duffy, for the nominal consideration of fourteen hundred dollars. It is also shown that Cornelius O'Connor caused an advertisement to be published in the Tri-Weekly News, (a paper published in the city of Galveston,) for several weeks prior to the 8th day of October, 1856, by which advertisement, "all persons were cautioned from buying or trading for" the lots in controversy, "as the title to the same was in dispute." On the 8th day of October, 1856, Ann Gormly, (formerly Ann Duffy,) and her husband, Peter F. Gormly, conveyed the lots in controversy to the appellant, Francis Bacon, for the consideration of fourteen hundred and sixty dollars, which was

paid in cash, and which was shown to have been the fair value of the lots at that time.

The evidence shows that when Cornelius O'Connor caused the advertisement to be inserted in the newspaper, the appellant took legal advice concerning the validity of the title of Ann Gormly, and was told that her title was a good one, so far as any information in relation to it could be gained from the records of the county. It is shown also that a friend of the appellant went to Cornelius O'Connor, and told him that the appellant thought of purchasing the lots from Gormly and wife; in reply to which Cornelius O'Connor said in substance, that if the appellant bought the lots he would buy a lawsuit—and he then went on to state that "John O'Connor had purchased a piece of land at administrator's sale, on credit, and that he, Cornelius, had become John O'Connor's surety for the purchase money—that John had failed to pay the note—that suit had been brought on said note and judgment recovered, and the land sold for very much less than its original price, and that he, Cornelius, would have to pay the difference, and that if he did have to pay the difference, he would hold the lots—that John O'Connor had no right to sell the lots until the debt for which he, Cornelius, was surety, was paid." The appellant's friend, pursuing the conversation with Cornelius O'Connor, told him that the proceedings in relation to the debt for which he was security would not affect the validity of John O'Connor's conveyance to Ann Duffy—to which Cornelius O'Connor replied, "I will have the lots." It is also shown that the appellant Bacon had a conversation with Beisner, the administrator of the estate of Fessenden, in relation to these lots, and Beisner told the appellant in that conversation "that John O'Connor had made a sale or made his property over to somebody, about the time his debt to Fessenden's estate became due." The main question which is presented to our consideration is, whether or not the appellant, Francis Bacon, purchased the lots in controversy from Gormly and wife under circumstances which constitute him a purchaser in good faith, without notice of any defect in the title. It is contended on the part of the appellant that Cornelius O'Connor is estopped from making any objection to the

title of Ann Gormly which he did not communicate to the friend of Dr. Bacon, when called upon by that friend to state his reasons why Ann Gormly could not make a good title to the lots. When Cornelius O'Connor was thus called on by Bacon's friend to say why Bacon would purchase a lawsuit, if he purchased the lots from Ann Gormly, he did not allege that the deed from John O'Connor to Ann Duffy was without consideration, and the argument is that he is estopped from making that objection to Ann Gormly's title, in this suit, so as to affect Bacon, because he did not make it specifically when called on by Bacon's friend to state his objections to Mrs. Gormly's title. We do not think this position is a sound one. It is very true that a purchaser of real estate will not be affected with notice of a defect in the title which he purchases by every idle rumor that may chance to be floating about, to the effect that the title is not a good one, provided he uses proper care in investigating the title which he purchases. So if a purchaser has certain information of a particular defect in the title which he proposes to purchase, and pursues a proper inquiry into the truth of the information which he receives, and ascertains facts which would satisfy a prudent man that the defect to which his attention has been called does not in point of fact exist, he may still be a purchaser in good faith. But the case is different where a party who proposes to purchase real estate has notice of such facts as would lead to a discovery of the truth upon proper inquiry, and who stops short in his inquiry of that point to which a prudent man, under the circumstances, would go. In the case before us, Cornelius O'Connor, when called on by Dr. Hurlbut, who acted as the friend of Dr. Bacon, stated that his objection to the right of Ann Gormly to sell the lots, arose from the fact that John O'Connor owed a debt to an estate; that he (Cornelius) was John's surety, that he would have the debt to pay, and that John O'Connor had no right to sell the lots until the debt to the estate was paid. It is very clear that Hurlbut understood Cornelius O'Connor to refer to the debt to the estate of Fessenden. Beisner had also told Bacon that John O'Connor had made a sale or made over his property to somebody about the time that his debt to Fessenden's estate became due. These facts make it plain that

15Y

Bacon's mind was directed to the question whether or not the sale of the lots by John O'Connor at a time when he was indebted to the estate of Fessenden, and when Cornelius O'Connor was his surety, was a good sale or not. He knew that John O'Connor had conveyed the lots to Ann Duffy. The title was perfect on its face. The conveyance was made before the debt to Fessenden's estate had matured. There was no judgment lien. What defect could there be in the title of Mrs. Gormly? There could be but one fact, the existence of which could invalidate the title of Mrs. Gormly, and yet Cornelius O'Connor persisted in his statement that Dr. Bacon could not get a good title, and declared that he would have the lots. What was the fact that would invalidate Mrs. Gormly's title? The fact that the conveyance to her was without consideration, would leave the lots in her hands subject to the claims of John O'Connor's creditors. It was known to Bacon that Cornelius O'Connor was surety for John O'Connor, and that if he paid the debt due to Fessenden's estate, he would have all the rights of Fessenden's estate against the property of John O'Connor. Now it would seem that all these things being so, the very point to which Dr. Bacon ought to have directed his inquiry was the validity of the conveyance from John O'Connor to Ann Duffy, and the fact upon which the validity of that conveyance depended was the payment of a consideration by Ann Duffy.

We cannot admit it to be a correct proposition that Cornelius O'Connor was under obligation to be at all times ready to explain his objections to the title of Mrs. Gormly, and that if, in attempting to explain those objections, he omitted to state every fact which showed that his objections were well founded, without any intention to conceal anything, he would ever afterwards be estopped from impeaching her title by showing facts which he had before omitted to state, or was unable to state. If Cornelius O'Connor had been called upon by Hurlbut, as the friend of Bacon, and asked to state his objections to the title of Mrs. Gormly, and had obstinately remained silent; or if he had stated any fact as the sole ground of his objections to Mrs. Gormly's title, which fact did not affect the validity of the title, then the case would have been different. But here, in what appears, so far as Cornelius O'Con-

nor was concerned in it, to have been a casual conversation, he discloses to Hurlbut facts which would have put a prudent man upon the inquiry whether or not the conveyance from John O'Connor to Ann Duffy was valid against the claims of John O'Connor's creditors. Beisner had told Bacon that Fessenden's estate was a creditor of John O'Connor, and that O'Connor had made a sale, or had made his property over to somebody about the time his debt to Fessenden's estate matured. This was surely enough to put Bacon upon inquiry whether or not the conveyance to Ann Duffy was voluntary. It directed his attention, or it ought to have directed his attention to the very point, "did Ann Duffy pay for the lots?" or "did John O'Connor 'make over' these lots to Ann Duffy without consideration?" And if Bacon purchased without first solving this question, he took the risk of subsequent devclopments.

We are of opinion that the instructions of the court to the jury, all taken together, contain a correct statement°of the law of the case, and are as favorable to the defendant in the court below as the circumstances of the case warranted. The evidence does not tend in any degree to the conclusion that Cornelius O'Connor, in his interview with Dr. Hurlbut, concealed anything, nor does it show that he was called upon to state his whole case, or informed that Dr. Bacon would act upon the facts which he might then disclose.

We are of opinion that the court below did not err in any of the rulings complained of in the assignment of errors. We think the evidence supports the verdict of the jury, and that there is no error in the judgment. The judgment of the court below is therefore affirmed,

Judgment affirmed.