## No. 6302.

## M. M. PEARSON ET AL. v. HUGH COX.

1. HOMESTEAD — INSANITY OF HUSBAND MAKING DEED. — Where the homestead is conveyed by deed regular in form and duly acknowledged by the wife and the deed is attacked on account of the insanity of the husband, such deed is not held to be void, but only voidable.
2. RESCISSION OF DEED. — To avoid a deed the rules of equity demand that the party seeking the rescission must pay back the consideration received under the deed. This applies in case of homestead where the deed is avoided on account of the insanity of the husband.

8. SAME—PRACTICE.—Where the plaintiff asking rescission offers to do equity and the decree ascertains that plaintiff is owing a sum of money received under the deed the decree should, on rescinding the contract, order sale of the property for the money owing after reasonable time for its payment.

ERROR from Fannin.  Tried below before Hon. D. H. Scott.

The opinion states the case.

*W. W. Wilkins* and *Richard B. Semple,* for plaintiffs in error, cited Heidenheimer v. Thomas, 63 Texas, 287; Berry v. Donley, 26 Texas, 746; Smithwick v. Andrews, 24 Texas, 488; Elston v. Jasper, 45 Texas, 409.

WALKER, ASSOCIATE JUSTICE.  March 24, 1884, M. M. Ussery and her husband, J. G. Ussery, brought suit against Cox to recover two hundred and eighty acres of land alleged to have been the homestead of plaintiff, and for the value of certain personal property appropriated by Cox.  Pending the suit the husband died, and the widow married David Pearson. The suit was revived in name of M. M. Pearson and her five minor children, the heirs of J. G. Ussery—it being alleged that there was no administration, and facts showing no need of one. David Pearson, the husband refusing to join with his wife as plaintiff, he was made defendant.

The pleadings showed that Ussery and wife had occupied the land as their homestead; that November 29, 1883, while they were thus occupying the land, and in possession of a large amount of stock cattle, milch cows, provender, etc., Ussery sold said land and personal property to Cox; that Ussery at the time was of unsound mind, and that Cox knew it, and taking advantage of his condition, induced him to sell at a largely inadequate price; that Mrs. Ussery was coerced into signing the deed; that Ussery, dying, left five children, all minors, and plaintiffs "offer to perform whatever may be required of them in the premises by the order and decree of the court, and here tender any moneys necessary for that purpose."  Prayer that the said contract for sale be rescinded, etc., and said deed be canceled and held for naught, for possession, rents, damages, etc.  Defendant Cox answered by demurrer and special exceptions, general denial, and that plaintiffs had received the proceeds of the sale, and with the money had purchased another homestead.

The charge of the court complained of is as follow: "If J. G. Ussery and his wife had their homestead upon the land described in the petition, and if his wife did not willingly sign the deed and acknowledge the same, but signed under coercion of her husband, * * and if defendant knew of such coercion, or had the means of knowing it; and if you further find that the wife never abandoned or relinquished her right to said homestead, then you will find for the plaintiffs (the widow and children), two hundred acres of said land so as to include the residence and other improvements; and as to the remainder of the property, if you find that J. G. Ussery was insane (as before explained at the time of the trade, but defendant did not know of such insanity, and did not make the purchase to defraud Ussery, then you will find for all the plaintiffs the remainder of the land and the value of the personal property as before explained, but that the defendant recover the amount of the purchase money paid by him for such property outside of the homestead—stating the amount in your verdict."

After some deliberation the jury submitted the inquiry to the judge: "If the jury find that J. G. Ussery was insane at the time of the sale, and also find that coercion was used by the husband unknown to defendant, will the jury be compelled to set aside the two hundred acres as a homestead solely on the fact that he was insane and coercion was unknown to defendant?"

The reply was: "I instruct you that in the case named, if the wife and children received the benefit of the money realized from the sale of the homestead you can not find the homestead for them, but should make your finding under the general charge; but if she or the children did not receive the benefit of such purchase money, then you should find for them a homestead in the case named."

The verdict was: * * * "That J. G. Ussery, at the time he made the deed to defendant and transferred the personal property to him, was insane, so that he was not competent to contract at that time; that defendant Cox bought the land and personal property in good faith, without knowing of such insanity, and paid the purchase money of the same. We find a verdict for plaintiffs for the land described in the petition, and in addition seven hundred and ninety-nine dollars and seventy-eight cents as cash value for the personal property. We find for defendant two thousand five hundred dollars, the

amount of purchase money paid by him for the land and personal property."

Upon this verdict a decree was rendered that plaintiff recover the land  *  *  *  and have writ of possession, provided that at any time within six months from this date (August 20, 1886) plaintiffs pay to the clerk of the court, for use of defendant Cox, the sum of one thousand seven hundred dollars and twenty-two cents, being the difference between the amount found for plaintiffs and the amount paid by Cox for the land. *  *  *  Upon failure, plaintiffs to be barred from having writ of possession, and title to rest absolutely in the defendant.

It is evident that the verdict was in response to the charge last given, and at the request of the jury, and that, taken in connection with the charge, it is a finding that the plaintiffs had received the benefits of the money received from the sale of the homestead. This was not without testimony nor pleadings. The defendant had in his answer pleaded that with the purchase money the deceased had provided for the plaintiffs a new homestead. The testimony showed a purchase by the deceased of a town lot in Sherman at eight hundred dollars, and five hundred dollars expense in placing a house thereon, with the further outlay of money for furniture; that the deceased had given his wife seven hundred dollars in money, and at his death she had received the further sum of three hundred dollars from a bank deposit. The receipt of these benefits having been shown, the effect of it, whatever it may be, would be the same, whatever disposition may have been made of them, whether on hand to be paid on the equities of the defendant, or if spent it was through no fault of defendant.

In finding that the plaintiff had received the money equivalent to the homestead, following the instruction, they ignored the claim of homestead rights asserted by the plaintiff, and this finding, without distinction between the homestead and the other property, is the only complaint against the verdict.

If this issue and verdict did no injustice to the plaintiffs, then the verdict as rendered should be sustained, whatever irregularities may appear in the record.

The court had charged that, if the homestead had not been abandoned or relinquished, then upon insanity being found as a fact the homestead rights were intact and that the homestead

of two hundred acres with improvements should be found for the plaintiffs; but as to the other land and the personal property, while plaintiffs could recover it, they should refund to Cox his money paid for it. This is the theory of the rights of the plaintiff insisted on in the appeal.

In avoiding a deed for property, other than the homestead, at suit of the heirs of the maker and against a purchaser innocent of the fact of the insanity of the maker and without fraud, the decree would provide for repayment of the money paid by such innocent party. This is the inflexible rule. He that seeks equity must do equity. The exception, if it be one, must arise from the nature of the homestead claimed, or rather from the laws protecting it to the family and from the supposed improvidence of the husband.

If while the husband is insane the wife can not dispose of the community property by her independent act, it is urged by appellants that her act is not aided by the concurrent act of the lunatic husband, and that as a consequence, as to the homestead, the conveyance to Cox was a nullity and that from it no equities could arise. It is also urged by appellants that such is the logical deduction from the cases of Heidenheimer v. Thomas, 63 Texas, 287, and Berry v. Donley, 26 Texas, 746. In Heidenheimer v. Thomas there were no equities to adjust upon the rescission, the deed having been obtained for an antecedent debt. In Berry v. Donley, the certificate of the privy acknowledgment was wanting in material parts, and the wife was not bound by it. The deed as to her had no effect, was a nullity, and a decree rescinding it was not necessary.

Our courts have held that "the deed of an insane person is not void but only voidable." (45 Texas, 415.) "A contract is void when it is without any legal effect; voidable when it has some effect, but is liable to be made void by one of the parties or by a third person." (Bishop on Con., sec. 611.) As the deed to Cox was perfect in form—executed by both parties, with the privy acknowledgment of the wife—the title in him would be good unless avoided by the parties or by judicial process. The defect was from no act, omission or incapacity of the wife, but it arose when the insanity of the husband was established in the suit to avoid the contract. To rescind a contract, which is but another term for avoiding it, the rule is, "that the one proceeding to rescind must either give back or offer to return whatever of value was received under the contract." (Bishop

on Con., sec. 679.) This rule is recognized by appellants in the petition, as it asks that the contract be rescinded—offering to do and to pay what the court on hearing should order.

The widow, as such, as to the homestead had nothing in law to complain of. She had duly acknowledged the deed for it; she had little equity, for she and her children had received the benefits of the sale. As legal representatives of the deceased, they were entitled to insist upon their right to reclaim the land. This right must be exercised subject to the equities of the transaction; yet it exists, regardless of the fairness of the sale or of the adequacy or inadequacy of the price received. The equities of the purchaser demand that compensation be made him as well for the homestead as for the other property. The right to compensation as against the entire tract, as determined in the decree, was only an application of the ordinary rules followed in proceedings for rescission of contracts. This does no wrong to the complainants, for they have the price, to be returned; it restores to Cox his money when he loses the land.

We conclude, therefore, that in avoiding the contract with Cox he was entitled to have his money, as well for the homestead as for the other property. The verdict, therefore, worked no injustice to appellants. The decree, however, should have ordered sale of the land upon failure to pay the one thousand seven hundred dollars and twenty-two cents into court.

The judgment below is reversed and is here rendered as below, save that, if plaintiffs fail within six months to deposit said sum with the clerk for benefit of defendant, then order of sale issue for the sale of said land to satisfy said judgment and costs of sale.

*Reversed and rendered.*

Opinion adopted June 9, 1888.