## LAWSON et al. v. ARMSTRONG.
### (No. 6272.)

(Court of Civil Appeals of Texas. Austin. Jan. 12, 1921. Rehearing Denied Feb. 9, 1921.)

**1. Appeal and error ⬪1010(1)—Finding on ample evidence is conclusive.**

In a suit to set aside a deed executed by husband and wife, a finding on ample testimony that the husband was insane when the deed was executed is conclusive on the Court of Civil Appeals.

**2. Constitutional law ⬪99—Homestead ⬪ 118(2)—Statute requiring husband to join in wife's conveyance applied, though husband insane, no vested rights being impaired.**

Acts 1913, c. 32, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4621), requiring the husband and wife to join in a conveyance of the homestead, whether community property or the separate property of either, applied to a conveyance of the homestead, which was the wife's separate property, though the husband was insane, where the conveyance was not made or necessary for the support and maintenance of either the husband or wife, as, prior to that act, there was no statute or decision vesting any right in the wife to convey without the husband joining, and the statute did not therefore destroy or impair any vested right.

**3. Appeal and error ⬪1062(1)—Special issue assuming fact that was almost conclusively proven held harmless.**

In a suit by grantors to cancel their deed and subsequent deeds to the land for fraud and insanity of one of the grantors, special issues assuming that the grantee practiced fraud on the grantors, if erroneous, did not require a reversal, where the facts were nearly conclusive that fraud was practiced, and the verdict would probably not have been different if the issues had been in proper form.

**4. Judgment ⬪255—Rents not recoverable on cancellation of deeds without evidence showing possession.**

In a suit by grantors to cancel their deed and subsequent deeds to the land for fraud and insanity of one of the grantors, rents were not recoverable for the use and occupation of the property where there was no sufficient evidence that defendants had been in possession or had the use or occupancy of the premises.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by Mrs. Emily E. Armstrong, for herself and as next friend of her husband, L. G. Armstrong, against W. D. Lawson and others. From a judgment for plaintiff defendants appeal. Reversed and remanded in part, and reformed and affirmed in part on rehearing.

Sleeper, Boynton & Kendall, of Waco, for appellants.

Weatherby & Rogers, of Waco, for appellee

BRADY, J. The following statement of the nature and result of the suit is taken from appellants' brief:

"This suit was instituted in the Seventy-Fourth judicial district court of McLennan county, Tex., by appellee Mrs. Emily E. Armstrong, for herself and as next friend for her husband, L. G. Armstrong, alleged to be a non compos mentis, against W. D. Lawson and J. T. Lawson, appellants, and Asa Warner, W. H. Dunson and wife, M. E. Dunson, and also W. R. Saunders, alleged to be a nonresident of the state, to cancel deeds to the land in controversy and for possession and rents.

"Plaintiff's claim for recovery is based on allegations to the effect that while plaintiff L. G. Armstrong was insane, having been so adjudged on the 24th day of March, 1911, he and his wife, said Emily E. Armstrong, were fraudulently persuaded and induced by defendant W. R. Saunders, who had been their legal advisor, to convey to him their homestead, the land in controversy, said Saunders representing that it was dangerous for said Emily E. Armstrong to live so far in the country on the farm with her insane husband, and if they would sell the home to him and let him handle the money which they were to get for same they could move to Waco and live in ease and comfort and educate their two little orphan grandchildren, and, believing and relying on said statements, she and her husband signed the deed and indorsed the notes recited therein and delivered the same to said Saunders; that the deed to Saunders is dated October 18, 1913, and duly acknowledged and recorded, and recites cash payment of $1,500, and one note for $2,000, three notes for $1,000 each, one note for $2,000, and one note for $1,700, payable, respectively, January 1, 1914, to January 1, 1919, inclusive, the whole consideration aggregating $10,200. It was alleged that the representations of Saunders were false, and after the notes were indorsed and delivered to him plaintiffs never received any money or thing of value from him.

"It was further alleged that on November 14, 1913, Saunders sold the farm to defendant Dunson for $13,332, by deed of said date duly recorded, of which $1,000 was paid in cash, and the grantee assumed the notes executed by Saunders to the Armstrongs, and in addition thereto gave to the said Saunders one note for $1,300 due January 1, 1919, and two notes for $1,166 each, due January 1, 1915 and 1916.

"That afterwards, on the 10th day of April, 1915, Dunson reconveyed the land to Saunders by deed duly recorded, the consideration recited being $10 and the assumption of said two notes for $1,166 each given by Dunson to Saunders and then held by the First State

Bank & Trust Company of Waco, and the further consideration of the assumption of a note for $4,000 due January 1, 1919, held by Asa Warner and given in renewal and extension of three of the notes given by Saunders to Armstrong and wife for the land, and also the assumption of the note for $1,700 given by Saunders to the Armstrongs due January 1, 1919, and the further consideration of the cancellation of the note for $1,300 given by Dunson to Saunders for the land, due January 1, 1919.

"That afterwards on the 19th day of April, 1915, Saunders conveyed the land to defendants W. D. and J. T. Lawson for the inadequate consideration of $8,532, of which $2,000 was paid in cash and the assumption by the Lawsons of the two notes for $1,166 each given by Dunson to Saunders for the land and assigned by Saunders to the First State Bank & Trust Company of Waco, and for the further consideration of the assumption by the Lawsons of two notes for $1,000 each and one for $2,000 given by Saunders for the land and held by defendant Asa Warner.

"It was further alleged that the Lawsons knew of the insanity of plaintiff L. G. Armstrong at the time when he and his wife conveyed the land to Saunders, and that they colluded and conspired with Saunders in purchasing the land and knew that Saunders had swindled plaintiffs out of their homestead, and that they made to Saunders only a small cash payment, and that he executed the deed to the Lawsons for the grossly inadequate consideration of $68 an acre, which it was alleged was only about one-half of the true value of the land.

"Plaintiffs allege that the reasonable rental value of the land was $1,000 per annum, and they prayed for a cancellation of all of said deeds and the liens on said land to secure the payment of said notes, and for recovery of the land, rents, etc.

"No answer was filed by the defendant W. R. Saunders.

"Defendant Asa Warner filed a disclaimer, alleging that the notes held by him had been paid by W. T. Herrick, vendee of the Lawsons.

"Defendant Dunson answered, alleging that he was unable to pay the notes given and assumed by him for the land and was forced to reconvey the property to Saunders, and he disclaimed any interest therein.

"Defendants W. D. and J. T. Lawson answered by general demurrer, general denial, and further that the land described in plaintiffs' petition was the separate property of the plaintiff Emily E. Armstrong, and that if her said husband, L. G. Armstrong, was insane and without mental capacity to execute the deed to Saunders set out in plaintiffs' petition, then said deed was duly executed by the said Emily E. Armstrong, who held title to the property in her separate right and said deed to said Saunders passed a good and indefeasible title to the property.

"They further alleged that on the 5th day of May, 1913, proceedings were had in the county court of McLennan county, Tex., in the same cause in which the said L. G. Armstrong was adjudged insane on the 24th day of May, 1911, wherein, upon the issue duly tried and submitted to the jury, the jury found that the said L. G. Armstrong was sane and the former judgment adjudicating him a lunatic was set aside, and that at the time when the said Armstrong and his wife executed said deed to Saunders, on October 18, 1913, the said L. G. Armstrong was sane and capable of transacting the ordinary affairs of life, and that both he and his wife were bound by said deed. They denied that they colluded or conspired with said Saunders to swindle plaintiffs out of said land and knew nothing in regard to the facts alleged by plaintiffs to the effect that Saunders had failed to pay plaintiffs for the land, and that they had bought the same and paid full value therefor. They pleaded the statute of two years' limitation in bar of plaintiffs' right to recover rents, accruing more than two years before the filing of plaintiffs' amended petition on the 22d day of October, 1919, in which plaintiffs first set up a claim for rents.

"On the trial special issues were submitted to the jury, and, based on the findings of the jury, the court gave judgment for plaintiffs vesting them with title to the land in controversy and declaring null and void the deeds from plaintiffs to W. R. Saunders, and from Saunders to W. H. Dunson, and from W. H. Dunson and wife to W. R. Saunders, and from W. R. Saunders to the Lawsons, with liens, incumbrances, etc., created thereby, and removed cloud from plaintiffs' title, also vesting in plaintiffs right, title, and interest of Asa Warner by virtue of the vendor's lien note held by him. The court also rendered judgment in favor of plaintiffs for rents against the said Saunders for $500 and against the Lawsons for $700.

"Judgment was also rendered against the Lawsons, Dunsons, and Saunders for costs.

"From this judgment W. D. Lawson and J. T. Lawson have appealed."

The findings of the jury affecting the questions on this appeal were in substance these: That at the time the deed from L. G. and Mrs. E. E. Armstrong to W. R. Saunders was executed L. G. Armstrong was insane, and that both W. D. Lawson and J. T. Lawson, at the time of the execution of such deed, had knowledge of his insane condition; that at the time of the execution of the deed Saunders intended to defraud the plaintiffs out of the proceeds of the land, and that both W. D. and J. T. Lawson had knowledge of the fraud practiced upon plaintiffs by Saunders; that the rental value of the Armstrong farm during the time subsequent to the deed from Saunders to the Lawsons was $1,500; and that the Armstrongs received from Saunders in the sale of the farm the sum of $800, which was allowed as a credit in the judgment upon such rental value. These findings of the jury are all supported by evidence.

### Opinion.

[1] The first question for decision is the claim of appellants that the verdict of the jury, in answer to special issue No. 1, is contrary to and not supported by the evi-

dence, for the reason that the evidence showed that L. G. Armstrong was sane when he executed the deed to Saunders, had the mental ability to transact the ordinary affairs of life, to understand the nature and effect of his deed, and to exercise his will in relation thereto. This issue was fairly presented by the trial court, with appropriate explanatory instructions, and was answered against appellants. It would not be profitable to detail the evidence on this question. It is sufficient to say that there is ample testimony, although conflicting, tending to establish Mr. Armstrong's insane condition during such period. The finding of the jury is conclusive upon this court, and therefore these assignments are overruled.

[2] It is next urged that the evidence shows the land in controversy was the separate property of Mrs. E. E. Armstrong, and that, if her husband was insane at the time of the execution of the deed to Saunders, she had the legal right to convey the land without her husband's joinder in the deed, notwithstanding the property was homestead, and that her deed conveyed a good title, and especially as appellants had no knowledge of the fraud of Saunders, but were innocent purchasers.

To this contention appellees reply that, even though the land in controversy were the separate property of Mrs. Armstrong, it was the homestead of herself and husband, and, he being insane and incapable of joining her in the deed, she could, at most, only convey the same for the purpose of obtaining the necessaries of life. They especially rely upon article 4621, Vernon's Sayles' Texas Civil Statutes, which is the act of 1913 (page 61, § 1), and which statute was in force at the time the deed in controversy was made.

As against the invocation of this statute, appellants urge that, prior to its enactment, Mrs. Armstrong had the legal right to convey the property without the joinder of her husband, notwithstanding it was homestead, because her husband was hopelessly insane, and that such right was a vested right of which she could not be deprived by the amendment of 1913, requiring the joint conveyance of both husband and wife, of the homestead. Appellants have cited the following authorities in support of their contentions: Clark v. Wicker, 30 S. W. 1114; Heidenheimer v. Thomas, 63 Tex. 287; Shields v. Aultman, Miller & Co. 20 Tex. Civ. App. 345, 50 S. W. 219; Gilley v. Troop, 146 S. W. 954; Gibson v. Pierce, 146 S. W. 983; Pierce v. Gibson, 108 Tex. 62, 184 S. W. 502, 1 A. L. R. 1675; Priddy v. Tabor, 189 S. W. 111.

In the case of Clark v. Wicker, supra, the Court of Civil Appeals for the Fifth District held that a wife could convey her separate property without being joined by her husband, where he is incurably insane, not-

withstanding the letter of the statute then in force was to the contrary. However, under the facts of that case, the question resolved itself into whether the wife whose husband was insane might dispose of her separate estate to secure the necessities of life without the joinder of the husband, as was required by the statute. All the community property had been squandered by the husband, and the family had been for years subsisting upon the proceeds of sales of the wife's separate estate. At the time of the conveyance by the wife she was in actual need of supplies with which to feed herself and children. As further facts material to a proper understanding of the gravamen of the decision, the facts show that the husband and wife had permanently separated after the husband's commitment for insanity, and the wife had consented to sue for a divorce, and thereafter obtained a divorce. Also at the time the conveyance was made the land in controversy was not homestead. Upon these facts, the Court of Civil Appeals held that its decision was not in conflict with Heidenheimer v. Thomas, 63 Tex. 287.

The last-named case, Heidenheimer v. Thomas, is cited by appellants because of the recognition therein that in numerous cases it had been decided that a wife abandoned by her husband might sell her separate estate as fully and in the manner that a feme sole may, and also the community property, when thus situated and when necessary to the maintenance of herself and family.

The cases of Shields v. Aultman, Miller & Co. and Gilley v. Troop, supra, are to the effect that the sale of the homestead by the husband while his wife was hopelessly insane was a valid sale, the property being community. However, as pointed out by the court in Priddy v. Tabor, 189 S. W. 111, in each of these cases there had been a permanent abandonment of the homestead by the husband.

In Pierce v. Gibson, 108 Tex. 62, 184 S. W. 502, 1 A. L. R. 1675, the Supreme Court held that while the wife is insane the husband may convey the community property, including a part that was homestead when the wife became insane, where such conveyance was for the purpose of paying a community debt secured by a mortgage lien upon the land, incurred during the insanity of the wife. But in that case, too, it appears that the husband had abandoned the homestead during the insanity of his wife.

In the case of Heidenheimer v. Thomas, supra, cited by both parties to this appeal, it was held that the wife could set aside a deed conveying homestead property, executed by herself and husband, where the husband was of unsound mind at the time the deed was executed. In the course of the opinion full recognition was given to the line of authorities holding that a wife abandoned

by her husband might sell her separate property, and even the common property, when necessary for the support of herself and family, and quoted with approval from Cheek v. Bellows, 17 Tex. 617, 67 Am. Dec. 686, as follows:

"She and her children are entitled to a support from the property, and if the husband is absent there is no reason nor rule of law that would prohibit the wife from making a contract to meet the necessities of the .case. It would be a strong case that would permit her to go further."

It was also said by Justice Stayton that:

"If the rule as stated were the true one, it, however, would not be broad enough to sustain the sale in this case as the sole act of the wife. The property named in the deed .was a part of the homestead of the family, and was the only property belonging to the husband and wife from which any revenue could be derived. * * * If such a rule existed, it could only spring from the necessity of the family to have a support, to which the sale, in the case under consideration, could have in no manner contributed. Upon the contrary, such a sale would have deprived the family of the only piece of property which could have contributed to its support."

The court further called attention to the statute requiring the husband and wife to join in the conveyance of the separate property of a married woman, and cited with approval the case of Leggate v. Clark, 111 Mass. 308, in which, under a similar statute, it was held that a conveyance of the wife's separate property was invalid where the husband joined while insane.

In Priddy v. Tabor, supra, the Court of Civil Appeals for the Second District, in effect, overruled its previous decision in Gilley v. Troop, 146 S. W. 954, and held that the insanity of the wife, even ·though permanent, would not of itself authorize the husband to convey the homestead, and cited numerous decisions from other states in support of its last holding. The effect of the decision is that no such right can exist merely because of the insanity of either spouse, to convey the homestead, unless in case of clear necessity. The Supreme Court, however, granted a writ of error in that case, stating, in substance, in the memorandum, that the writ was granted because the decision of the Court of Civil Appeals was thought to be in conflict with Shields v. Aultman, Miller & Co. and Gilley v. Troop. By consent of the parties, this cause has been withdrawn from the Supreme Court; and, for aught that appears from the memorandum ·of the Supreme Court, the writ may have· been granted for the purpose of authoritatively settling the question, and not necessarily because it was thought the decision in Priddy v. Tabor was wrong.

From a careful review of the authorities we have concluded that at the time the act of 1913 was enacted requiring the joinder of the husband and wife in a conveyance of the homestead, whether separate property of either or community property, there was no statute or authoritative decision by the court of last resort in this state authorizing the wife to convey the homestead at will merely because of the insanity of her husband. As to statutory law a similar statute has long been in effect requiring the joinder of husband and wife in the conveyance of the wife's separate estate without reference to whether it was homestead or not. As to the previous state of the decisions, no case which we have been able to find has gone so far as to hold that the wife, under such conditions, could alone make a conveyance of her separate estate, under facts similar to the present case, even as to property not homestead. In all the cases where the wife's sole conveyance of her separate property was upheld the holding was based upon the law of necessity, and facts were present showing an imperative need for such conveyance in order to support and maintain the wife and family. In these circumstances we are unwilling to extend the doctrine any · further.

The facts of the instant case disclosing that the sale in controversy was not made for the purpose of the support and the maintenance of either Mr. or Mrs. Armstrong, and not being necessary for such purpose, the mere insanity of the husband was not sufficient to render the conveyance effectual to pass title to their homestead. Indeed, the facts in this case show that, instead of the sale being necessary for the support and maintenance of this old couple, its necessary and also immediate result, because of the fraud practiced, was to render them virtually helpless, and to make the wife practically an object of charity upon her friends. Therefore the conveyance could not be defended upon any law of necessity, and the facts do not justify a departure from the plain letter of the statute, or justly create any exception to it. As tending to support our conclusion, we cite the following authorities: Article 4621, Vernon's Sayles' Tex. Civil Statutes; Heidenheimer v. Thomas, 63 Tex. 287; Priddy v. Tabor, 189 S. W. 111; Cason v. Laney, 27 S. W. 420; Pearson v. Cox, 71 Tex. 246, 9 S. W. 124, 10 Am. St. Rep. 740; McFalls et ux. v. Brown, 36 S. W. 1110, 37 S. W. 784; Parker v. Schrimsher, 172 S. W. 165; Weatherington v. Smith, 77 Neb. 363, 109 N. W. 381, 13 L. R. A. (N. ·S.) 430, 124 Am. St. Rep. ·855; Leggate v. Clark, 111 Mass. 308; Brothers v. Bank, 84 ·Wis. 381, 54 N. W. 786, 36 Am. St. Rep. 932.

Having held that there was neither any statute nor any decision of the Supreme Court amounting to a rule ·of property, vesting any right in Mrs. Armstrong 'to· solely convey the homestead, her separate property, merely· because ' of· the husband's· insanity

prior to the act of 1913, it necessarily follows that the application of that statute to this case cannot have the effect to destroy or impair a vested right. The premise upon which it is claimed that this statute destroyed a vested right having failed, it becomes unnecessary for us to decide whether such a statute would, in effect, destroy a vested right, if applied in a case where the wife, under previous laws, would have had the right to convey her separate property, although homestead, without the joinder of the husband.

It is also claimed that there was no evidence showing that appellants had any knowledge or notice of the fraud of Saunders in obtaining the deed from appellees, but that they were innocent purchasers for value. This question is raised by several assignments, and in various forms the judgment and findings of the jury are attacked upon this ground. While it is not necessary to set out the evidence here, we have concluded, from a careful examination of the statement of facts, that there was sufficient evidence to show that both appellants had knowledge of the fraud practiced by Saunders, or of such facts as would have put a reasonably prudent person upon inquiry which would have led to knowledge of such facts, by the exercise of ordinary diligence and understanding, which in law amounts to notice, and is equivalent to actual knowledge. The evidence upon this point was largely circumstantial, but we have no doubt that there was sufficient evidence to support the finding of the jury, under the principles of the following authorities: Bacon v. O'Connor, 25 Tex. 213; Moody v. Martin, 117 S. W. 1015; Sickles v. White, 66 Tex. 179, 17 S. W. 543; Littleton & Clay v. Giddings, 47 Tex. 109; Brotherton v. Weathersby, 73 Tex. 473, 11 S. W. 505; LaBrie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785; Black, Rescission and Cancellation. §§ 264, 265; Jacobs v. Totty, 76 Tex. 343, 13 S. W. 872; Brown v. Tex. Hedge Co., 64 Tex.. 396; Dodson v. Cooper, 50 Kan. 680, 32 Pac. 370; Bartles v. Gibson (C. C.) 17 Fed. 293; Varner v. Carson, 59 Tex. 303; Mitchell v. Inman, 156 S. W. 292. Therefore these assignments are overruled.

[3] Another ground upon which a reversal is claimed is the alleged error of the trial court in submitting certain special issues, because the court therein assumed that Saunders had practiced fraud upon appellees in respect to the execution of the deed, which was an issue of fact placed in controversy by the pleadings. There may be ground for the contention that these charges, as submitted, were upon the weight of the evidence, but, if so, we are of the opinion that the facts are so convincing and so nearly conclusive that Saunders did defraud appellees that it is safe to assume that the appellants were not prejudiced by the alleged assumption in the court's charge. The undisputed facts reveal

an amazing and almost incredible story of duplicity and imposition practiced by Saunders upon an aged couple whereby they were duped into conveying their homestead. We believe that, if the court had safeguarded this point, still the verdict would not have been different. The assumption in these particular issues could not reasonably have affected the jury's verdict upon the question of Saunders' fraud, which was expressly submitted and affirmatively found by the jury in another special issue. We can hardly conceive how it could have affected their finding as to appellants' knowledge of the fraud. Therefore, if the alleged error be conceded, it is not sufficient to reverse the case.

[4] Lastly, it is contended by appellants that the judgment was erroneous in so far as it awarded appellees a recovery for rents against appellants for use and occupation of the premises in the sum of $1,500, less a credit of $800. The point is made that there is no evidence to show that appellants or either of them had the use and possession of the premises, or for what length of time prior to the trial.

In an action by a vendor for rescission of the sale of land for fraud, we understand the rule to be that he may recover the reasonable value of the use and occupancy of the premises by the vendee, or by those to whom the latter has sold with knowledge of the fraud. However, this rule necessarily contemplates that there has been a use and occupancy of the land, and the liability of the party dates only from his possession. In this case the general issue was tendered, and the burden devolved upon the appellees to establish this element in their case.

The rule is virtually conceded by appellees' counsel, but they insist that there was sufficient evidence to establish the possession and period of use or occupancy of the premises by appellants. We have carefully examined the references to the statement of facts on this point, and we have not found sufficient evidence to justify the judgment for the rental value of the land as to the appellants. There is the claim that one of the Lawsons testified that he had erected a barn on the premises in controversy after they purchased the land. Our construction of the testimony on this point convinces us that the claim is not supported, as this testimony appears to have related to a barn placed upon other property previously purchased by one of the Lawsons. The other facts are entirely insufficient to show possession, or any use and occupancy by appellants after their deed was acquired, and the judgment is erroneous to this extent.

We sustain the tenth assignment of error, but overrule all others; and the judgment is affirmed in all respects, except as to the recovery against appellants for rents, and the

judgment is reversed and remanded for trial upon this issue.

Affirmed in part, and in part reversed and remanded.

### On Rehearing.

Both sides have filed motions for rehearing, to which we have given careful consideration.

We have concluded to adhere to the holding that, under the findings of the jury, the deed from the Armstrongs was not binding merely because of the insanity of Mr. Armstrong, notwithstanding the property was the separate property of Mrs. Armstrong, who joined in the conveyance. In the original opinion we sought to distinguish the facts involved in the case of Clark v. Wicker, 30 S. W. 1114, and we still think that case must be justified upon the rule of necessity within which the facts of the case clearly brought it. However, if we should accept literally the broad language of the opinion to the effect that a married woman may legally convey her separate real estate without being joined in the deed by her husband when he has become incurably insane, it does not follow that the doctrine is applicable to the present case. There is no finding in this case that the husband was incurably insane at the time of the execution of the deed. On the contrary, the evidence is conflicting as to whether or not Mr. Armstrong was even temporarily insane when the deed was executed. The issue of incurable insanity was not submitted, nor was it necessary under the issues of this case. We have concluded that the grounds set up in appellants' motion for rehearing are without merit, and such motion is overruled.

As to appellees' motion for rehearing, we have also concluded that our former decision was correct in holding that the cause should be reversed and remanded for trial upon the issue of rents, or the value of the use and occupancy of the property by the Lawsons, if any there was. However, in this alternative the appellees have offered to remit their recovery for this item. Therefore the remittitur will be allowed, and the judgment, as thus reformed and modified, will be affirmed.

Reformed and affirmed.