## J. D. LABRIE ET AL. v. M. C. CARTWRIGHT.

Decided April 7, 1909.

**1.—Subsequent Purchaser—Duty of Inquiry—Notice—Evidence.**

If a subsequent purchaser of land has knowledge of any fact or circumstance sufficient to put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of a prior deed to said land, he will be charged with the knowledge which might have been acquired by such diligence. The favorable opinion of an attorney upon the abstract of title will not relieve him of the consequences of his own knowledge.

**2.—Same.**

The issue being whether or not a subsequent purchaser of land was a bona fide purchaser without notice, held, that the fact that the person offering to sell him the land as agent of the vendors was to receive one-half of the purchase money for making the sale, and the further fact that said subsequent purchaser offered to buy the land from the prior purchaser after such purchaser's deed was put on record, were sufficient to require the court to submit to the jury the issue of bona fides on the part of the subsequent purchaser in making the purchase.

**3.—Same—Synonymous Terms—Charge.**

While the expressions "prior claim" and "prior deed" are not necessarily synonymous, still, in an action of trespass to try title between a subsequent and prior purchaser of the land in controversy the use of the term "prior claim" instead of "prior deed" in the charge of the court was not reversible error when the only evidence of a prior claim on the part of the defendant was under and by virtue of a prior deed.

**4.—Principal and Agent—Notice to Agent when not Notice to Principal.**

The rule that the principal is chargeable with notice of all facts that come to the knowledge of his agent while acting within the scope of his agency, does not apply when the agent has a personal interest in the matter which would likely lead him to conceal his knowledge from his principal.

Appeal from the District Court of Sabine County. Tried below before Hon. W. B. Powell.

*Goodrich & Synnott, Woods & Kerr* and *S. M. Johnson,* for appellants.

*Greer, Minor & Miller,* for appellee.

NEILL, ASSOCIATE JUSTICE.—On June 30, 1905, J. D. LaBrie sued M. C. Cartwright and a number of other persons, as the heirs of Matthew and Amanda Cartwright, in trespass to try title to recover six hundred acres out of the northeast corner of the north half of the Isaac Powell league, situated in Sabine County, Texas. The plaintiff also made the Texas Loan Agency and W. A. Polley, under whom he claims by general warranty deeds, parties defendant and prayed judgment against them on their warranties in the event of his failure to recover the land.

All the defendants who were sued for the land disclaimed any title or interest in it except the appellee, M. C. Cartwright, who answered by a plea of not guilty. The Texas Loan Agency answered plaintiff's

petition by a general demurrer, and W. A. Polley, though cited, failed to answer at all.

The case was tried before a jury and the trial resulted in a judgment against the plaintiff for M. C. Cartwright, and in favor of the plaintiff against the Texas Loan Agency and W. A. Polley on their warranties. The plaintiff and the Texas Loan Agency have both appealed from the judgment.

As we shall reverse the judgment on account of an error in the charge, only so much of the evidence as may be necessary to expose the questions considered and to show the grounds upon which the judgment is reversed will be presented or discussed.

Isaac Powell, the original grantee, conveyed to John Cartwright and his son, Matthew Cartwright, the north half of the Isaac Powell league by deed dated July 4, 1838. The title of this part of the survey afterwards became vested in Robert G. Cartwright, another son of John Cartwright, and it is agreed by the parties to this action that he is the common source of title under which they both claim—the defendant, M. C. Cartwright, deraigning his title from a deed of R. G. Cartwright, and the plaintiff claiming his under a deed from R. G. Cartwright's heirs to H. G. Damon. The deed from R. G. Cartwright, through which defendant claims, conveyed the north half of the league to the first Matthew Cartwright. This deed was dated November 22, 1845, and filed for record May 12, 1846, and, the records having been destroyed in 1875, was again filed for record on July 12, 1889, at 2 o'clock p. m. All the other heirs of Matthew C. Cartwright, the first, and his wife, Amanda, conveyed seven hundred and ninety-four acres of the Isaac Powell league, including the six hundred acres in controversy, to Matthew C. Cartwright, who is the defendant in this suit, by their deed dated August 20, 1904, which was filed for record September 25, 1905. It is admitted that plaintiff was a purchaser for value. The only question is, Did H. G. Damon purchase for value in good faith and without notice or knowledge of the prior deed from Robert G. Cartwright to Matthew Cartwright. So much of the evidence bearing upon this question as is necessary to be considered will be stated in considering the assignments of error to which it is pertinent.

*Conclusions.*—1. The first assignment of the appellant LaBrie, which is adopted by his co-appellant, is:

"The court erred in charging the jury in the fourth paragraph of its charge, as follows: 'The evidence shows that said Damon paid a valuable consideration for said land. The issues, therefore, to be determined by you are: Did he pay said consideration in good faith without notice of the prior deed for said land from R. G. Cartwright to Matthew Cartwright? In order for said Damon to have been a purchaser in good faith, it was necessary for him to exercise reasonable diligence in making inquiry as to the title he was acquiring, that is, such diligence as an ordinarily prudent man would have exercised under the same circumstances, and if he had knowledge of facts that would have provoked inquiry on the part of an ordinarily prudent

man, the law charged him with the duty of following up such inquiry with ordinary diligence, and with knowledge of all the facts which such an inquiry would have disclosed; and if he failed to do so, he was not a *bona fide* purchaser for value without notice, provided you further believe that had he made such inquiry, he would have been led to actual notice of facts which, if followed up, would have disclosed the existence of the prior deed from R. G. Cartwright to Matthew Cartwright,' first, because plaintiff established the fact beyond controversy that Damon had no actual knowledge of the prior deed from R. G. Cartwright to Matthew Cartwright; and, second, because plaintiff established the fact beyond controversy that H. G. Damon had no knowledge, actual or otherwise, of any fact or facts which would put him on inquiry and which would have led him to actual notice of the prior deed from R. G. Cartwright to Matthew Cartwright."

The error insisted upon by the proposition under the assignment is, as we construe it, that the paragraph of the charge embodied in the assignment submits an issue not raised by the evidence; and the grounds upon which the insistence is urged are (1) that Damon had an abstract of title to the land submitted to his attorney, Kirby, which showed that at the time he purchased and paid the consideration the record title was in his vendors; (2) and that the evidence shows that at the time of his purchase he (Damon) had no knowledge of the deed from Robert G. Cartwright to Matthew Cartwright executed November 22, 1845, nor of any fact which would have put him upon inquiry which would have led to the discovery of said deed. That, therefore, he was an innocent purchaser for value.

Damon having purchased subsequent to the date of the deed from Robert G Cartwright to Matthew Cartwright, the burden was upon plaintiff to show that he (Damon) was a purchaser for value, without notice of such prior conveyance. Unless the evidence upon the issue was of such probative force that no fair-minded man could reach any other conclusion from it than that he was such purchaser, it was the duty of the trial court to submit it to the jury.

A *bona fide* purchaser is one who has in good faith paid a valuable consideration without notice of the adverse rights of another. In other words, he must be a *bona fide* purchaser for value without notice. It may be conceded that the evidence conclusively shows that Damon did not have *actual notice* of the prior conveyance; but if he had knowledge of any fact or circumstances sufficient to put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice, he was charged with knowledge which might have been acquired by such diligence.

In view of this principle, can it be said from the evidence, as a matter of law, that Damon had no knowledge of any fact or circumstances which would put him on notice of the prior conveyance by Robt. G. Cartwright? If not, then it was a matter of fact for the jury and not the court to decide.

Laying aside for the present the question, to be considered under another assignment, whether S. M. Johnson in negotiating the sale was acting in the matter as Damon's agent, we will inquire whether

there are any facts or circumstances shown by the evidence of which Damon had knowledge, which the jury might find were such as would have put a prudent man upon inquiry, which, if followed up with due diligence, would have led him to the knowledge of the fact of the prior conveyance under which the appellee claims the land in controversy. In pursuing this inquiry we will consider, *pro hac vice,* that Johnson was, as appellants claim, the agent of the heirs of Robt. G. Cartwright with a power of attorney from them to sell the land, and was acting only as their agent under the power of attorney in negotiating the sale to Damon.

It is undisputed that this power was coupled with an interest in the land, entitling Johnson to one-half of the proceeds of the sale. This fact was known to Damon, for when a deed was tendered him executed by Johnson as attorney in fact for the heirs, Damon refused to accept it, but demanded in lieu of it a deed from the heirs in person. He knew when the deed from the heirs, executed by them in person in accordance with his demand, was tendered to and accepted by him, that Johnson was to receive one-half of the purchase money. Can it be said as a matter of law that this fact alone was not, in and of itself, sufficient to put a prudent man upon inquiry? We think not. It is a matter of common knowledge that men of common sense and ordinary business capacity, when they believe they have a good title to property, do not give away half of it or of the proceeds of its sale to another merely in consideration of his making a sale. If, then, with a knowledge of the fact that Johnson was to recover half of the proceeds of the sale, might not the jury have found from all the facts and circumstances shown by the evidence that prudence required Damon to make further inquiry as to his vendor's title to the land; and that, if he had prosecuted the inquiry with ordinary diligence, he would have found that the ancestor of his vendors had conveyed the land to Matthew C. Cartwright, under whom appellee claims, and that consequently they had no title to convey? We think such might have reasonably been their finding.

Damon, upon the supposition that Johnson was acting solely for himself and as agent for Robert G. Cartwright's heirs, must be regarded as dealing with him at arm's length. In such event, to his mind would naturally have been suggested this inquiry: "Why is it, if Robert G. Cartwright's heirs have title to this land, Johnson is to receive one-half of the proceeds of sale for inducing me to buy it? I must inquire of them the cause of this." Upon making such inquiry of them, can it be said, in view of their testimony, as a matter of law that he would not have obtained the information which their testimony shows: that, until Johnson came to them and asked them to make him the power of attorney, they had never claimed the land; had never paid taxes thereon; had always thought that Robert G. Cartwright had sold it; but that Johnson persuaded them to execute the power by representing that the record of deeds of the county where it lay showed that they owned the property, and that he ought to have a half interest in it for his services in finding the land for them? Following up this inquiry, he would probably have ascertained that the appellee and those under whom he claims had

been assessing it as their property and paying taxes upon it from a date prior to Robert G. Cartwright's death; and by asking the appellee he would have found out that he was the owner of the land. When a fact is known sufficient to put a subsequent purchaser upon inquiry, he can not close his eyes to it and excuse himself from pursuing the inquiry by taking the opinion of an attorney upon an abstract of the record title. If this could be done, the rule that whatever is sufficient to put a party upon inquiry, etc., is notice, would be rendered nugatory.

Again, the evidence shows that after the deed, dated November 22, 1845, of Robert G. Cartwright to Matthew Cartwright under which appellee claims, was re-recorded, Damon, notwithstanding he testified that he was a purchaser for value in good faith without notice of appellee's title, immediately offered to buy the land from the owner at $2 per acre. Why did he do this, if he had purchased in good faith without notice of appellee's title? From this the jury may have reasonably reached the conclusion that he had notice of appellee's title when he bought from Robert G. Cartwright's heirs, else he would not have made the offer to purchase the land from the appellee. The jury did not have to believe Damon anyway; and the facts and circumstances surrounding the transaction are not such as bear convincing proof that he was a *bona fide* purchaser without notice.

2. The second assignment of error is:

"The court erred in its charge wherein it instructed the jury in words as follows: 'At the time Damon purchased said land from the heirs of R. G. Cartwright, the deed from R. G. Cartwright to Matthew Cartwright was not of record; hence, if Damon had notice of such deed, you are instructed that it must have been otherwise than by the record. This could have been given to Damon in either one of three ways: (1) By actual knowledge thereof prior to the payment of the purchase price by him for the land; (2) by knowledge of any fact or facts sufficient to put an ordinarily prudent man upon inquiry, which, if prosecuted with ordinary diligence, would have led to actual notice of the prior deed from R. G. Cartwright to Matthew Cartwright, prior to the payment by said Damon of the purchase price for said land under his said deed; (3) by the knowledge of Silas M. Johnson of the prior claim of Matthew Cartwright and those having his title to the land in controversy, provided you believe from the evidence that said S. M. Johnson was the agent of said H. G. Damon to make said purchase for him (Damon).' First, because defendant Cartwright failed to establish the fact that Silas M. Johnson was the agent of H. G. Damon in purchasing the land in controversy. Second, because Silas M. Johnson's knowledge, if any he had, of the prior claim of Matthew Cartwright or those having his title, was not notice to H. G. Damon, actual or otherwise, of the prior deed from R. G. Cartwright to Matthew Cartwright."

The first proposition advanced is: "Prior claim and prior deed are not synonymous terms, are not *idem sonans,* and do not mean one and the same thing." That the terms are not *idem sonans* is self-evident; and that they are not necessarily synonymous, nor mean the same thing, is apparent. But when all the evidence, as well as the

agreement of the parties, shows that appellee's "prior claim" is "under a prior deed," the terms, as used in the charge of the court, are practically synonymous and are of the same meaning, or rather, the term "prior claim" is necessarily referable to appellee's "prior deed," and can mean nothing else in this case.

The second proposition is: "If Silas M. Johnson was the agent of H. G. Damon in purchasing the land in controversy, then his knowledge of a prior claim or of the deed from Robt. G. Cartwright to Matthew Cartwright could not be imputed to Damon, since it was clearly shown by the evidence in the case beyond dispute or controversy that Johnson had a personal interest in the land sold to Damon, and any knowledge acquired by him of the deed from Robt. G. Cartwright to Matthew Cartwright would have advised him of an adverse title to the title which he and the heirs of Robt. G. Cartwright were offering for sale to Damon and, such being the case, it will be presumed that Johnson would not communicate any such knowledge to Damon, since it would be adverse and antagonistic to his own interest and the interest of the heirs of Robt. G. Cartwright, and the rule that the principal is chargeable with knowledge of all facts that come to the knowledge of his agent while acting within the scope of his agency, does not apply when the agent has a personal interest in the matter which would likely lead him to conceal his knowledge from his principal."

We can see no escape for appellee from this proposition. For the doctrine that a principal is chargeable with notice known to his agent is based, not only upon the fiction of identity, but also upon the fact that it is the duty of the agent to communicate his knowledge to his principal, and the presumption that he has performed his duty. No such presumption can arise, however, where the agent is dealing with the principal in his own interest, or where for any other reason his interest is adverse to his principal, so that it is to his own interest not to communicate the knowledge to his principal. In such a case the general rule, that notice to an agent is notice to his principal, does not apply. (Harrighton v. McFarland, 1 Texas Civ. App., 292; Kaufman v. Robey, 60 Texas, 311; Texas Loan Agency v. Taylor, 88 Texas, 47; Allen v. Garrison, 92 Texas, 546; Cooper v. Ford, 29 Texas Civ. App., 253; Clark & Skyles on Agency, sec. 485; Mech. Ag., sec. 723.)

It is undisputed that Johnson had a half interest in the land and received such an interest in the proceeds of the sale of the same which he effected to Damon. Therefore, even if it should be conceded that he was Damon's agent in procuring his purchase of the land from the heirs of Robert G. Cartwright, his knowledge, if any he had, of the prior deed to Matthew Cartwright or the claim of appellee to the property or of any fact sufficient to put him on inquiry, could not, under the principle of law stated, be imputed to Damon. In this view it can make no difference upon whom was the burden of proving Johnson was Damon's agent in purchasing the land, for it relieves the case of such an issue by rendering it immaterial whether such agency existed, as in no event could Johnson's notice of the deed under which appellee claims be imputed to Damon.

3. This also disposes of the third, seventh, eighth, ninth, tenth and eleventh assignments and all the propositions under them, in appellant's favor.

4. There being evidence, as we have held in considering the first assignment of error, tending to show that Damon had notice of the deed under which the appellee claims or at least of such facts and circumstances as would put him upon inquiry, and such deed being of record when LaBrie, as well as his vendor, Polley, bought the land, the plaintiff could only recover by proving that Damon was a *bona fide* purchaser without notice of such deed. Hence, the court did not err in refusing to instruct the jury to return a verdict for La-Brie. We, therefore, overrule the fourth assignment of error.

5. From what we have said in considering the first and fourth assignments of error, it follows that, had it not been for the error in the charge exposed by the second assignment of error, there would have been no error in the court's refusing to grant a new trial upon the ground that the verdict was contrary to the law and the evidence.

6. The evidence, the admission of which is complained of in the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth assignments of error, was, we think, admissible, in connection with other facts and circumstances, as tending to show that Damon had notice of the prior conveyance under which appellee claims; and the principle that declarations of a vendor made after he has conveyed the property can not be introduced to disparage his title, has no application to any of the evidence referred to in these assignments.

On account of the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*