CARTWRIGHT v. LA BRIE et al.†

(Court of Civil Appeals of Texas. Galveston. Jan. 27, 1912. Rehearing Denied Feb. 22, 1912.)

1. EVIDENCE (§ 65*)—PRESUMPTION—KNOWLEDGE OF LAW.

A person will be presumed to know that the law requires tax records to be kept.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

2. VENDOR AND PURCHASER (§ 243*)—BONA FIDE PURCHASERS—EVIDENCE.

In trespass to try title, where the single issue was whether plaintiff's predecessor had notice of facts sufficient to have put him upon inquiry as to the existence of the prior deed under which defendant claimed, letters of plaintiff's predecessor, indicating that he knew that tax records would disclose persons rendering lands for taxation, and that such persons would likely be the owners, were properly excluded.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 606–608; Dec. Dig. § 243.*]

3. VENDOR AND PURCHASER (§ 229*)—BONA FIDE PURCHASER—TIME OF NOTICE.

A bona fide purchaser is bound by notice of any circumstance sufficient to put him upon inquiry up to the date of the delivery of the deed to him and the payment by him of the purchase money.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

4. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

Error, in an instruction, as to the date at which notice must have been brought to a purchaser of land in order to deprive him of the character of bona fide purchaser, was not prejudicial, where there was no evidence tending to show notice at or prior to the time he received his deed and paid the purchase price.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

5. TRIAL (§ 194*)—INSTRUCTION—PROVINCE OF JURY—WEIGHT OF EVIDENCE.

In trespass to try title, where the plaintiff claimed under a bona fide purchaser for value without notice, an instruction that certain depositions could not be considered as notice to the purchaser of the facts therein stated, but were admissible to show what facts would have been discovered by him had he pursued a further investigation of the title, was not objectionable as being upon the weight of evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–486; Dec. Dig. § 194.*]

6. VENDOR AND PURCHASER (§ 243*)—BONA FIDE PURCHASER—EVIDENCE.

In trespass to try title, where the issue was as to whether a purchaser under whom plaintiff claimed was a bona fide purchaser for value and without notice, evidence relating to what passed between the grantors and a person who afterwards became the purchaser's agent relative to the grantors' title was inadmissible.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 606–608; Dec. Dig. § 243.*]

7. APPEAL AND ERROR (§ 1033*)—PARTY ENTITLED TO COMPLAIN—ERROR FAVORABLE TO SUCH PARTY.

A party cannot complain on appeal that a charge was objectionable as a comment on the weight of the evidence, where, if so, it directed the attention of the jury particularly to the evidence against the adverse party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

8. TRIAL (§ 253*)—BONA FIDE PURCHASER—NOTICE—INSTRUCTION.

In trespass to try title, where the only issue was as to whether a purchaser under whom plaintiff claimed was a bona fide purchaser, an instruction that the purchaser was

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

charged with notice of all facts and deeds with reference to the land contained in the records of a certain county and with notice of all facts disclosed by the abstract of title furnished him before the purchase of the land, and that, if the abstract disclosed a fact or circumstance relating to the land that would cause an ordinarily prudent person to further investigate, he would be charged with the duty to make such investigation, and if, in pursuing it, he would have discovered the defect in the title to the land he was purchasing, he was charged with notice of such defect whether he made the investigation or not, is not objectionable as limiting the jury to evidence of notice furnished by the abstract.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

9. TRIAL (§ 251*)—INSTRUCTION—CONFORMITY TO ISSUES.

Where the only issue in trespass to try title was whether a purchaser under whom plaintiff claimed had been a bona fide purchaser for value and without notice, there was no error in refusing a special charge based upon the fact that a deed of trust from the purchaser gave his grantee only a lien on the property.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

10. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—STATEMENT.

An assignment of error not followed by any statement, as required by the rules, cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

11. VENDOR AND PURCHASER (§ 244*)—BONA FIDE PURCHASER—SUFFICIENCY OF EVIDENCE.

Evidence in trespass to try title, where the only issue was as to whether plaintiff's predecessor had notice or knowledge of facts and circumstances sufficient to have put him upon inquiry, as to the existence of a prior deed under which defendant claimed, held sufficient to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

Appeal from District Court, Sabine County; W. B. Powell, Judge.

Trespass to try title by J. D. La Brie against Matthew Cartwright and others. Judgment for plaintiff against defendant Cartwright, and he appeals. Affirmed.

See, also, 55 Tex. Civ. App. 144, 118 S. W. 785.

Hugh B. Short, Greer & Minor, and F. D. Minor, Jr., for appellant.

REESE, J. The following statement of the nature and result of the suit is taken from appellant's brief. Appellee filed no briefs in this court. The appellant in this case is Matthew Cartwright, erroneously styled in the record M. C. Cartwright. On June 30, 1905, J. D. La Brie sued Matthew Cartwright, the appellant, and a number of others, as the heirs of Matthew and Amanda Cartwright, deceased, in trespass to try title to recover 600 acres out of the northwest corner of the north half of the Isaac Powell league, in Sabine county, Tex. The plaintiff

also made the Texas Loan Agency and W. A. Polley, under whom he claims by general warranty deeds, parties defendant, and prayed judgment against them on their warranties in the event of his failure to recover the land. All of the defendants who were sued for the land disclaimed any title or interest in it, except appellant, Matthew Cartwright, who answered by a plea of not guilty. The case has been tried in the lower court twice. On the first trial, before a jury, a verdict and judgment were rendered against the plaintiff in favor of Matthew Cartwright and in favor of the plaintiff against the Texas Loan Agency and W. A. Polley on their warranties. From that judgment the plaintiff, J. D. La Brie, and the Texas Loan Agency, appealed, and the San Antonio Court of Civil Appeals reversed the judgment and remanded the cause to the court below for another trial on account of an error in the charge of the court on a question not involved in the present appeal. The opinion of the Court of Civil Appeals, at San Antonio, will be found in 55 Tex. Civ. App. 144, 118 S. W. 785. The second trial of the case in the district court resulted in a verdict and judgment, on October 7, 1910, in favor of the plaintiff against the appellee. From that judgment Matthew Cartwright prosecutes this appeal.

Isaac Powell, the original grantee, conveyed to John Cartwright and his son, Matthew Cartwright (father of appellant) the north half of the Isaac Powell league by deed dated January 1, 1836, filed for record on July 14, 1838. John Cartwright also had a son named Robert G. Cartwright. The title to the north half of the league afterwards became vested in that Robert G. Cartwright, and by deed dated November 22, 1845, that Robert G. Cartwright conveyed the tract to his brother, Matthew Cartwright, the father of the appellant in this cause. That deed was first filed for record in Sabine county on May 12, 1846, and, the records of that county having been destroyed by fire in 1875, it was refiled for record on July 12, 1889. The appellant, Matthew Cartwright, and the appellees, claim title under Robert G. Cartwright as common source. The appellant, Matthew Cartwright, deraigns title under the deed of November 22, 1845, from Robert G. Cartwright to Matthew Cartwright, the first, and under a quitclaim deed from all the other heirs of the first Matthew Cartwright and his wife, Amanda, dated August 20, 1894; the first Matthew Cartwright having died in 1870, and his wife, Amanda, on June 27, 1894. The plaintiff, J. D. La Brie, claims title under a deed from the heirs of Robert G. Cartwright to H. G. Damon dated June 20, 1889, and filed for record on July 12, 1889; but that deed having been delivered to Damon, and Damon having paid the purchase money

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

therefor on July 8, 1889, H. G. Damon having conveyed the land in controversy by a deed, under which J. D. La Brie claims, subsequent to July 12, 1889, on which date the deed of November 22, 1845, from Robert G. Cartwright to the first Matthew Cartwright, was refiled for record, the only question in the case is: Did H. G. Damon purchase in good faith and without notice or knowledge of the prior deed of November 22, 1845, from Robert G. Cartwright to Matthew Cartwright, the first?

It was agreed by the parties that Robert G. Cartwright, Sr. (son of John Cartwright and brother of Matthew Cartwright, Sr.), was the common source; that the appellant, Matthew Cartwright, had title to the 600 acres in suit unless H. G. Damon was an innocent purchaser under the deed to him, dated June 20, 1889, and filed for record July 12, 1889, from the heirs of Robert G. Cartwright; and that the only issue in the case was whether or not H. G. Damon was an innocent purchaser for value and without notice under that deed.

The evidence established beyond controversy that Damon paid value for the land and did not have actual notice of this former deed, and the case turned upon the issue as to whether he had notice or knowledge of such facts and circumstances as would have been sufficient to put a prudent man on inquiry, which if prosecuted with reasonable diligence would have led to a knowledge of the execution of the prior deed by the ancestor of his vendors to the ancestor of appellant. This was the issue submitted to the jury; the court instructing them that upon this issue the burden of proof was upon appellee to show that Damon was an innocent purchaser. We find that the evidence was sufficient to support the verdict of the jury, and hence, in deference to the verdict, we find, as a conclusion of fact, that Damon was an innocent purchaser for value without notice of the existence of the former deed, and that the facts and circumstances shown by the evidence were not sufficient to put him upon inquiry. All of the evidence offered was upon this issue, and in disposing of the assignments of error it will be necessary to set out, in substance, the material part of it.

[1, 2] By the first assignment of error appellant complains of the ruling of the court in sustaining appellee's objection (that they were irrelevant and immaterial) to certain letters of Damon offered in evidence by appellant. These letters were both written on July 13, 1889, by Damon to S. M. Johnson, at San Augustine, Tex. This was five days after the deed from the Cartwright heirs to Damon had been delivered and the money paid. They have no reference to the land in controversy or the transactions relating to the sale thereof. They both refer to other lands in Sabine county, which Damon was desirous of purchasing, and requests Johnson to examine the assessor's roll at Hemphill to find out who owned the tracts and then to write to them and ascertain the price. In one of the letters Johnson is requested to examine the "assessor's book" for this purpose. These letters were offered for the purpose of showing "the knowledge, belief, or consciousness" on the part of Damon on July 13th, five days after the delivery of the deed from the Cartwrights and the payment of the purchase money, that he could find out from the assessor's roll or book who owned the land in controversy, and that inquiry of the owner thus disclosed, about the land, was the natural and proper course to be pursued by the purchaser. It was shown that the courthouse of Sabine county was destroyed by fire in 1875 and again in 1909, and that the original tax rolls up to the burning of the courthouse in 1909, kept by the county clerk, and also in the office of the tax collector, were destroyed by fire in 1909. Testimony was also introduced which tended to show that an investigation of the tax rolls and tax book, by which is meant the assessor's abstract book required to be kept by him, would have shown that the vendors of appellee had never rendered the land for taxation, but that it had been for a number of years rendered by the ancestor of appellant, who was a resident of the adjoining county of San Augustine. It is contended that this information was sufficient to put Damon upon inquiry, and that such inquiry, if properly pursued by making inquiry of such owners, would have inevitably led to a knowledge of appellant's title.

We may concede that if Damon had made investigation of the tax rolls and other tax records he would have learned facts which would have naturally suggested inquiry by him, as a prospective purchaser of the lands, of the persons rendering the land for taxation, as to their title, and that proper inquiry would have led to information as to their title. But the letters, at the most, only show that Damon knew that these tax records would disclose who was rendering the land for taxation, and that such persons would likely be the owners. Why offer any evidence to establish a fact which will be presumed? The law, which Damon must be presumed, without any evidence, to know, knowledge of which in fact he would not be allowed to deny, required those records to be kept. The following statement taken from page 46 of appellant's brief furnished a complete answer to the propositions advanced under this assignment: "Damon was charged by law with the knowledge that the tax assessor's records were open to inspection by him; he was charged by law also with the knowledge that the assessor's records would show the names of the owners of the Isaac Powell league."

The only possible effect the letters could

have had was to show that Damon had knowledge of a fact knowledge of which is imputed to him by law, and ignorance, in fact, of which would not have protected him. A great deal of evidence was introduced of facts and circumstances in Damon's knowledge which the jury might, under the charge of the court, have found sufficient to put a prudent man upon inquiry, which inquiry, if properly prosecuted, would have led to the knowledge that his vendors had no title. The evidence will be further referred to in passing upon the assignments attacking the verdict and judgment as being unsupported by, and contrary to, the evidence. It is insisted by appellant that the evidence of the letters was admissible as a circumstance corroborative of the other facts and circumstances in evidence. We think not. It is disclosed that Silas M. Johnson, who had a power of attorney from the Cartwright heirs to sell the land, offered it to Damon. There was no need for him to investigate the tax rolls to determine whether these parties owned the lands. It was not essential to their title, so far as the title of appellant is concerned, that the heirs of R. G. Cartwright had paid taxes on the land or rendered it for taxation. Such fact would only have involved a probable claim for unpaid taxes. The records showed title in Damon's vendors. The fact that a few days after the conclusion of the sale Damon desired to purchase other lands, as to the owners or claimants of which he had no knowledge and sought this information from the tax rolls, not as a means of determining whether such owners had title, but merely to determine tentatively with whom he might negotiate for the purchase, was not relevant or material to the only issue submitted to the jury. It is not conceivable that Damon would have considered said persons the true owners, and bought from them without further inquiry. The inquiry was not to find out whether such persons had good title, but whether they were such persons as probably owned the land. In the case of the purchase of the land in controversy, the information Damon had by the records, as shown by the abstract of title, rendered any investigation of the tax records altogether unnecessary for the only purpose for which he sought such information in the letters offered in evidence. We think the letters were properly excluded as irrelevant to the only issue in the case.

There is no evidence, of course, to indicate that Damon had any actual knowledge as to these tax records, in relation to the land in controversy. It may be said further that the evidence afforded by these letters, if they were admissible, was so weak and of so little force in establishing appellant's side of the issue, in comparison with the mass of facts and circumstances admitted in evidence, that it cannot be conceived that they would have influenced a favorable verdict

for appellant which the evidence admitted failed to do. The assignment must be overruled.

[3, 4] The court charged the jury as follows: "H. G. Damon is not charged with notice of any fact made known to Silas M. Johnson by the heirs of Robert G. Cartwright, or any one else, unless the same was communicated to him before he purchased the land on June 20, 1889. And the testimony by depositions of the witnesses, Robert G. Cartwright, Matthew Cartwright, and J. D. McCutchan, cannot be considered by you as notice to H. G. Damon of the facts therein stated, but they were admitted before you to show you what facts would have been discovered by Damon had he pursued a further investigation of the title he was purchasing, but not that he had notice of the facts therein stated, and will not be considered by you unless under the instructions given you it was the duty of Damon to further investigate the title."

Several objections are made to this charge by the second assignment of error. The first objection is that Damon was bound by notice of any fact or circumstances acquired by him up to the date of the delivery of the deed to him and the payment by him of the purchase money, which, according to the undisputed evidence, was July 8, 1889, and that by this charge there was excluded from consideration by the jury evidence of notice of any fact coming to Damon between the date of the deed, June 20th, and the date of its delivery and payment of the purchase money on July 8th. Appellant's contention on this point is entirely correct, and if there was any evidence at all tending to show, and which the jury would have been entitled to consider as showing, that any such facts or circumstances known to Johnson came to Damon's knowledge between these two dates, the error in the court's charge would require a reversal of the judgment, unless we could say that it was cured by other portions of the charge. A careful reading of the entire charge leads to the conclusion that the statement as to the date referred to was due to inadvertence or carelessness in preparing the charge, and was not intentional. Throughout the charge it is stated and reiterated that Damon would be bound by notice of any fact or circumstance sufficient to put him upon inquiry, if he had such notice at or before the time he paid the purchase money and received the deed, which is stated in the charge to have been July 8, 1889.

An examination of the entire record, however, discloses with reasonable certainty that all the information Damon had with regard to the title, or of any fact or circumstance which could have put him on inquiry as to any defect in the title, came to him before the date mentioned in the court's charge, and there is nothing which could have the force of evidence tending to show that any

such information or notice came to him after that date and prior to the delivery of the deed and payment of the purchase money. It is not contended by appellant that Damon would have been bound by notice or knowledge of any fact with regard to the title acquired by him after such date.

The court instructed the jury that notice of the unrecorded deed from R. G. to Matthew Cartwright could have been given Damon in one of two ways: "By actual knowledge thereof *prior to the payment of the purchase price* made by him for the land." And further: "Hence, if you believe that said H. G. Damon, *at the time he accepted the deed from the heirs of R. G. Cartwright and paid the purchase money,* had either knowledge of the prior deed, or if he had knowledge or notice of any fact or facts or circumstances tending to show the existence of a deed from Robert G. Cartwright sufficient to put an ordinarily prudent person on inquiry," etc. And again: "On the other hand, if you find, from the evidence, that *at the time Damon paid the purchase price for said lands to the heirs of R. G. Cartwright* he had neither notice or knowledge," etc. So that the minds of the jury were directed throughout the charge, except in this particular instance, to the date of payment of the purchase money and delivery of the deed as the date prior to which Damon would be bound by any notice acquired by him, of the defect in his title. We are not prepared to say, however, that this would be a sufficient answer to appellant's objections to the charge. Baker v. Ashe, 80 Tex. 356, 16 S. W. 36.

It is contended by appellant that the evidence is sufficient to warrant the conclusion by the jury that a certain letter written by S. M. Johnson to A. H. Kirby, who had been employed by Damon to examine the abstract, and which it is contended contained additional statements which were material to this issue, reached Kirby after June 20th and before July 8th. But appellant bases this contention upon matters of pure conjecture, unsupported by anything in the evidence of a substantial nature that would have justified the jury in reaching the same conclusion. And we think it may be said that this letter would not have conveyed to Damon knowledge of any fact of any weight calculated to put him on inquiry in addition to what he is shown by the evidence to have already known prior to June 20th. We think this objection to the charge does not, in view of all the evidence, present reversible error.

[5, 6] The second objection to this portion of the charge, that it is upon the weight of the evidence, is not well taken. That portion of the charge which tells the jury that the testimony of the heirs of R. G. Cartwright could not be considered as notice to Damon, etc., was not error. This testimony related to what passed between the witnesses and Johnson as to their title when the latter approached them to get the power of attorney. Johnson had no connection with Damon until some time afterwards, and was only desirous of procuring a power of attorney to sell to anybody to whom he might be able to do so. This testimony was admissible to show what Damon would have learned about the title if the other evidence was sufficient to call upon him to make inquiry, but clearly was not notice to him of any defect in his title, and the court did not err in so limiting it.

Other testimony contained in these depositions, referring to what was done by Damon himself after he learned of the title of appellant (but after he had parted with the title), with reference to his reconveying the land to his vendors and receiving back the purchase money, obviously was not intended to be covered by this limitation in the charge, and could not have been so understood. The second assignment of error, with the several propositions thereunder, is overruled.

[7, 8] The following portion of the charge is objected to by appellant in the third assignment of error: "You are also instructed that H. G. Damon is charged by law with notice of all facts and deeds with reference to the land in controversy which are disclosed and contained in the deed records of Sabine county, Tex., prior to his purchase. He is also charged with notice of any and all facts disclosed by the abstract of title which was furnished him or his attorney by Silas M. Johnson before the purchase of the land, and if said abstract disclosed a fact or circumstance with reference to said land that would cause an ordinarily prudent person to further investigate and look into, he would be charged with the duty to make such inquiry and investigation and to be such as an ordinarily prudent person would have made with like information under like circumstances, and if, in pursuing such inquiry, he would have discovered the defect in the title to the land he was purchasing, he is charged with the notice of such defect, whether he made the investigation or not."

If this portion of the charge is a comment on the weight of the evidence in directing the attention of the jury particularly to the evidence *against appellee* furnished by the abstract of title, appellant cannot complain of it on that ground. The charge is not in any sense subject to the criticism that it limited the jury to this evidence of notice furnished by the abstract, and forbade them to consider any other. On the face of this portion of the charge this objection is not tenable, and taken in connection with other portions of the charge this is emphasized. Throughout the charge, as partly shown by some of the quotations heretofore made, the jury is told emphatically that Damon would be bound by notice or knowledge of any and every fact and circumstance shown by the evidence which the jury might find sufficient

to put him upon inquiry, which inquiry, if properly prosecuted, would have led to a knowledge of the state of the title. The charge on this point, and indeed in all respects, is exceptionally full, clear, and comprehensive, and altogether favorable to appellant. The assignment and propositions thereunder are overruled.

The following charge is assailed by the fourth assignment of error: "No fact in evidence before you in this case which came to the knowledge of Damon after he bought and paid for said land will be considered by you for any purpose, unless you find and believe from the evidence that at or before the time he bought and paid for the land he was in possession or knowledge of some fact or circumstance which would have led or caused a person of ordinary care and prudence to further look into and investigate the title he was acquiring, and if you find under all the instructions given you from the evidence before you it was his duty to so further look into and investigate the title, then such evidence will be considered by you in determining what he (Damon) would have discovered had he made the investigation."

None of the objections made to this charge, as set out in the propositions under the assignment, have any merit, and it is overruled without discussion. Nor do we consider it necessary to discuss the fifth assignment of error, which deals with the refusal to give a special charge requested by appellant. This requested charge is probably objectionable as being on the weight of the evidence, but, at any rate, stated a proposition altogether unnecessary to be stated, in view of the charge of the court.

[9] There was no error in refusing the special charge requested by appellant referred to in the sixth assignment of error. It was immaterial that the deed of trust of Damon to the Texas Loan Agency gave it only a lien on the property. It was agreed, as stated by appellant in his brief, that the only issue to be submitted to the jury was whether Damon was an innocent purchaser for value and without notice under his deed. If the fact to which the attention of the jury was particularly directed was material, the charge is subject to the objection that it is a prejudicial comment on the weight of the evidence, as to the effect of the acts of Damon some time after his purchase and after he received notice of the want of title in his vendors.

[10] The seventh assignment of error is not followed by any statement, as required by the rules, and cannot be considered.

[11] The remaining assignments of error from 8 to 12 present several objections to the verdict and judgment as being contrary to the evidence and the law as set out in the court's charge. Upon a former trial of this case there was a verdict and judgment for the defendant Cartwright, from which the plaintiff La Brie appealed. The appeal was heard and decided by the Court of Civil Appeals for the Fourth District. The judgment of the district court was reversed for error in the charge in submitting to the jury the issue as to whether notice to Silas M. Johnson was notice to Damon; the court holding that this issue was not raised by the evidence, but that it clearly appeared that Damon would not be bound by such notice to or knowledge of Johnson. La Brie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785. The court held that the evidence was sufficient to raise the issue as to notice to Damon, and overruled assignments of error of appellant on this point. Upon substantially the same evidence, but under a charge which did not submit the issue as to Damon being bound by notice to Johnson, the jury on the present trial rendered a verdict for La Brie, and the appellant has, under the assignments referred to, presented substantially the same contention as to his side of the case; that is, that upon the only issue agreed upon the evidence is not sufficient to support the verdict. If the evidence, taking the most favorable view of it, which the jury, under well-settled rules, were authorized to take, is sufficient to support the verdict, it must stand. The issue was one of fact, and there does not appear to have been any request for an instructed verdict by appellant. The material parts of the evidence are set out in the opinion of the Court of Civil Appeals referred to. The substance of it will be stated here, omitting what has been already stated.

The records at the time Damon bought and paid the purchase money showed title in the vendors, the heirs of Robert G. Cartwright, who was the common source of title. Appellant claimed under a deed from Robert G. Cartwright to Matthew Cartwright, the first ancestor of appellant, and of his vendors, executed in 1845, but unrecorded at the time Damon paid the purchase money and got his deed. The evidence was clearly sufficient to show that Damon at this time had no actual knowledge of the existence of this deed, and the case for appellant depends upon whether the evidence shows knowledge of such facts on the part of Damon as were sufficient to put a prudent man on inquiry, which if prosecuted with reasonable diligence would have led to a knowledge of the defects in the title of his vendors. The law upon this question is so well settled as to render any statement of it here superfluous. It is clearly stated in the opinion of the Court of Civil Appeals on the former appeal of this case.

Shortly prior to the sale to Damon, Silas M. Johnson procured, upon his own solicitation, a power of attorney from the heirs of Robert G. Cartwright. This power of attorney authorized Johnson to investigate the title, to discover or sue for or otherwise recover or get possession of any land in

Sabine county, Texas, to which they were entitled as heirs of Robert G. Cartwright, deceased, with authority to sell the land in whole or in part, to receive the consideration, to compromise with any adverse claimant, or claimants, whenever Johnson deemed such course expedient and advisable, and conveyed to him an undivided half interest in all the land or money or other things which he might recover by suit or otherwise. Johnson bound himself, within reasonable time from the execution of the power of attorney, to institute the necessary proceedings for the investigation and clearing up of the title, and he was to pay all expenses incurred in investigating and clearing the title to said land. This power of attorney was recorded in Sabine county, May 20, 1889. It was shown by the testimony of the heirs of Robert G. Cartwright that they were not disposed to execute this power of attorney and were inclined to disclaim any interest in the land, and so told Johnson; but upon Johnson's insistence they finally executed it. This is the testimony controlled and limited by the charge of the court, as set out in the second assignment of error, and as Damon had no actual knowledge of it, and was not bound by Johnson's knowledge, cannot be considered in determining the issue upon which the case turned further than as indicated by the charge. Johnson had prepared and submitted to Damon an abstract of title which showed the title in the heirs of Robert G. Cartwright. Among other conveyances shown by the abstract of title was the record of proceedings in partition in the probate court of San Augustine county in the administration of the estate of John Cartwright, father of Robert G. and Matthew Cartwright, which showed that the north half of the Isaac Powell league was set off and allotted to Robert G. Cartwright. The abstract also showed an agreement signed by all the Cartwright heirs confirming this partition, all of which placed the title in Robert G. Cartwright, the common source of title, which is not denied by appellant. The abstract, however, did not show any deed from Matthew Cartwright to John Cartwright. Johnson testified that he made careful examination of the records of Sabine county and did not find any instrument of record which showed title in the heirs of Matthew Cartwright, but that the record showed title in Robert G. Cartwright. Johnson sent the abstract to A. H. Kirby, at the instance of Damon, who examined it and made the following note on it: "So far as I am able to judge from the data furnished, which is by no means satisfactory, Robert G. Cartwright seems to have title to the land in question, provided the proceedings in estate of John Cartwright are regular and the court could enter such decree as the abstract shows: (1) Want more complete abstract of proceedings in the estate of John Cartwright.

(2) Want Q. C. deed from the heirs of M. Cartwright conveying the undivided interest of M. Cartwright in this land. (3) Want certificate to abstract. (4) Want field notes of original survey. (5) Want larger plat, showing present subdivisions of league so that the effect of all the deeds abstracted may be shown as regards the land sought for."

On June 8, 1889, Damon, at Corsicana, wrote to Johnson, at San Augustine, inclosing this memorandum made by Kirby, and advising Johnson that he would take the land if title proved satisfactory, and calling his attention to the memorandum as to what was considered by Kirby necessary. Johnson then procured a supplemental abstract containing affidavits of the heirs of Robert G. Cartwright, Damon's vendors, that "their ancestor, Robert G. Cartwright, was a distributer of the estate of John Cartwright, and that in the partition of said estate in the probate court of San Augustine county 2,214 acres of the Isaac Powell survey in Sabine county was set apart to him, as they were informed by the records of the said probate court, and that not within affiant's knowledge or belief had this land ever been sold or conveyed by said Robert G. Cartwright, nor his administrators or heirs, and that they believed that the title was still in said heirs." The supplemental abstract also contained the orders and proceedings of the probate court of San Augustine county, heretofore referred to, which vested the title to this land in Robert G. Cartwright. It was further shown that the assessor's books and abstract showed that this land had never been rendered for taxation by Robert G. Cartwright or his heirs since he conveyed it to Matthew Cartwright in 1845, but had been so rendered and taxes paid by Matthew Cartwright and his heirs after him. There was no evidence that Damon had any knowledge of this. It appears that in 1890 Damon discovered that the deed of 1845 from Robert G. Cartwright to Matthew Cartwright had been recorded in Sabine county, and that he wrote to Leonidas Cartwright expressing the opinion that this made his title worthless, and he proposed to buy the land from the Matthew Cartwright heirs, offering $2 per acre, which offer was not accepted, and that he quitclaimed to his vendors his right, title, and interest in the land, and they paid him back the purchase money; but this was all after he had executed the deed of trust on the land, by sale under which the land passed to those from whom appellee deraigns title.

Bearing in mind that by agreement of the parties the only issue raised in the trial court was whether Damon was an innocent purchaser for value and without notice of the deed from Robert G. to Matthew Cartwright, the first, the evidence can only be considered in so far as it tends to support the one side or the other of that issue, and

the question presented on this appeal is: Is the verdict of the jury supported by the evidence, or is it so contrary to and unsupported by the evidence that this court should set it aside? It seems to us that there can be but one answer to this question. It was held by the Court of Civil Appeals on the former appeal, in reply to the present appellee's contention, that a verdict for the present appellant should be set aside for the same reason as here urged, that it was contrary to and unsupported by the evidence, that it could not be said, as matter of law, that the evidence detailed was insufficient to show that Damon had notice at the time of his purchase of the deed referred to, and this holding is undoubtedly correct, and we fully concur in the reasoning of the opinion in that case. But the issue is one of fact, and, while the evidence is such as would have sustained a finding for appellant, it is not such as to compel such a finding. There was no attempt to show actual knowledge of this deed by Damon before its record, some days after he paid the purchase money and received his deed. The abstract showed title in his vendors. It seems to us that the only material circumstance to excite inquiry on his part was the terms of the power of attorney given by his vendors to Johnson. Such powers of attorney were not uncommon, nor was it unusual for persons to have inherited good title to lands of which they were in ignorance until the matter was brought to their notice, generally by some one who sought to profit by the service. It was for the jury to say whether the provisions of it were such as to put a person of ordinary prudence upon inquiry. With a good record title shown behind his vendors, it cannot be said that this circumstance was, as a matter of law, of such a suspicious character as to call for inquiry by Damon as to the title of his vendors. The suggestion by Kirby that a quitclaim deed should be procured from M. Cartwright evidently was intended to make clearer and more definite the proof of title in Robert G. Cartwright, resting upon the proceedings in the probate court of San Augustine county, and was not calculated to suggest an inquiry as to whether Robert G. Cartwright had conveyed to Matthew Cartwright, and Kirby's statement as to the unsatisfactory character of the abstract evidently refers to the same matter.

We confess that we attach little importance to Damon's actions after he learned of this deed, in so far as it could affect the merits of the issue of notice at the time of his purchase. His mistaken idea that this destroyed his title, his offer to buy from the heirs of Matthew Cartwright, and his reconveyance to his vendors, on receipt back of the money paid by him, might very well have been considered by the jury as acts of

a thoroughly honest man, anxious to put himself right, and not to wrong any one, rather than as suggestive of such notice to him of this deed before his purchase as would have invalidated his title. Unfortunately his probably good intentions were thwarted by the fact that he had previously parted with the title. The tax assessor's records were not constructive notice to Damon of the facts shown therein, and there is nothing in the evidence which indicated that he had actual knowledge thereof. Taking all of the evidence relied upon by appellant, we are entirely unable to arrive at the conclusion that it is of such a character as to require of the jury a different verdict from that rendered. The assignments of error attacking the verdict and judgment as contrary to the evidence, and the several propositions thereunder, have been carefully examined, and are overruled.

We find no error in the record, and the judgment is affirmed.

Affirmed.