### R. M. BEVILLE ET AL. V. ANNA JONES.

#### No. 6257.

1. **Declarations and Admissions.**—As a general rule the declarations or admissions of a vendor made after title has vested by deed in the vendee and not made in his presence can not be admitted in evidence to disparage the vendee's title. The same rule applies to acts of the vendor done after his deed has been executed when fraud or fraudulent conspiracy are not in issue. If the deed was made in consideration of the undertaking of the vendee to provide for and sustain the vendor the rule would be different and the subsequent acts of the vendee violative of his contract can be shown.

2. **Mental Weakness—Deed.**—Mental weakness of a vendor or old age will not alone avoid a deed in the absence of imposition or undue influence on the part of the vendee. See opinion for facts.

3. **Deed—Undue Influence.**—A deed may be avoided by the vendor when an undue influence has been exercised by the vendee on a vendor of weak mind and aged. This influence may when the deed is a deed of gift from a child to the parent be inferred from the relationship itself, but this will not apply when the deed of gift is from the parent to the son or daughter, in the absence of evidence casting suspicion on the conduct of the latter.

4. **Notary Public—Authentication.**—A notary public is only required to explain the contents of a deed before his authentication when it is made by a married woman, and the fact that he failed to explain to a *feme sole* the contents of a deed executed by her can not be admitted in evidence in a suit by the vendor to avoid the deed.

5.   **Argument of Counsel.**—See this case for language used by counsel in argument before a jury held to be so objectionable as of itself to require a reversal of the judgment.

APPEAL from Wise.    Tried below before Hon. F. E. Piner.
The opinion states the case.

*Carswell, Bullock & Fuller,* and *Gordon & McMurray,* for appellants.
1.    The issue being as to the mental capacity of the plaintiff to execute the deed, the treatment by defendants towards plaintiff after its execution, whether kind or unkind, was irrelevant and immaterial; and if irrelevant testimony that has a tendency to mislead or prejudice the jury is not excluded upon objection being made the judgment will be reversed. De Leon v. White, 9 Texas, 598; Waul v. Hardie, 17 Texas, 553; Schmick v. Noel, 64 Texas, 406.
2.    The declarations of a party can not be introduced in his own behalf, and especially to impeach his own acts transpiring years before.
3.    Clara Beville being the grantee in the deed, which showed upon its face that it was intended by the grantor to be the separate property of the grantee, declarations made by R. M. Beville, not ratified by her or in her presence, were inadmissible after the transaction was no longer pending.
The declarations or admissions of an agent are binding on his principal only when they are made during the continuance of the agency in regard to a transaction then pending.   McAlpin v. Cassidy, 17 Texas, 449; Bigham v. Carr, 21 Texas, 142; McKay v. Treadwell, 8 Texas, 176; Heirs of Reddin v. Harriet Smith et al., 65 Texas, 26; Tucker v. Carr, 39 Texas, 98.
4.    Counsel should be required to confine the argument strictly to the evidence and argument of opposing counsel, and a departure from this rule in a manner calculated to inflame the passions and excite the prejudices of the jury not corrected by the court will be cause for reversal. Rules 39, 41, and 121 for Dist. Ct.; Willis & Bro. v. McNeill, 57 Texas, 465, and cases there cited; T. & St. L. Ry. Co. v. Jarrell, 60 Texas, 267.

*H. C. Ferguson* and *W. D. Gose,* for appellee.—The deed claimed to have been made by appellee to appellant Clara Beville was executed at a time when appellee was in such weak mental condition as not to understand and know the nature and character of the same, was without consideration, and procured by undue influence, imposition, and fraud. Chambers v. Fort Bend Co., 14 Texas, 34; Oliver v. Chapman, 15 Texas, 400; Ellis v. Matthews, 19 Texas, 390; Gibson v. Fifer, 21 Texas, 260; Reeves v. Bass, 39 Texas, 619.

HOBBY, JUDGE.—This was a formal action of trespass to try title,

brought by plaintiff Mrs. Anna Jones, on April 24, 1885, against the defendants, Clara Beville and her husband B. M. Beville, to recover lot No. 1 in block 39 of the town of Decatur, Wise County. The only answer filed was a plea of not guilty.

There is nothing in the plaintiff's petition on the one hand indicating upon what ground a recovery was sought, nor can it be inferred from the answer alone what defense was relied on to prevent a recovery.

It is admitted by the parties that prior to October 1, 1879, the title to the lot was in the plaintiff. And it appears from the evidence that on that day a deed in proper form, duly acknowledged by the plaintiff and recorded, was executed to defendant Clara Beville, the daughter of plaintiff, in consideration of love and affection and the sum of one dollar.

It further appears from the testimony that the purpose of the suit was to vacate and set aside this deed upon the ground of mental imbecility upon the part of plaintiff at the time of its execution, and that it was not read over and explained to plaintiff by the notary public certifying to the acknowledgment.

In addition to the legal title evidenced by the deed it also appears from the testimony developed on the trial that defendants relied upon a ratification of the same by the conduct and declarations of plaintiff subsequent to its execution, in permitting and encouraging the erection of valuable improvements on the lot by them, and repeated admissions that she had conveyed the property as alleged.

The facts in this case upon which the judgment was rendered vacating the deed were that in the summer of 1879 the plaintiff, who appears to have been advanced in years, lost her husband and was much troubled in mind. She was at that time in bad health and afflicted with what her physician testified was commonly known as "hypo," and "imagined she would die soon." "This condition continued for four or five months. subsequent to the death of her husband, when she recovered and has been in sound health since."

She testified that in the fall of 1879 Newton, the notary public, brought a paper to her to sign, which he stated was a deed to Clara (the defendant), her daughter, and in response to her inquiry he informed her that the deed was all right. She did not know, however, that she was giving her place away; that the officer did not read or explain it to her. She was unable to read or write, and he held her hand that she might make her mark. She testified also that defendant R. M. Beville, husband of her daughter, was loitering about the yard during the officer's interview with her and left with him.

It is shown by bills of exception that plaintiff was permitted to testify that in 1883 she stated to one Barnes and one Sewall that "Beville was speaking of selling the lot; that it was her property and they could not sell it." And further, that "Beville had often ordered her away, threat-

ened to kick her out, and she was locked out one night and remained in the street." He had also "thrown her furniture out of the house and had told her that 'he and Newton were too sharp for her.'" Her declarations with reference to the lot, made in 1883 to Barnes and Sewall, were admitted over objections of the defendant upon the ground that they were not binding on the defendants, who were not present, and were the declarations of plaintiff. Her statement as to the treatment of her by defendants was objected to also because it was immaterial and irrelevant.

There are few principles of law more firmly settled than that the declarations or admissions of the owner of the land after he has parted with the title and possession can not be received to impeach or disparage the title of the vendee and in the absence of the latter. Thompson v. Herring, 27 Texas, 282; Grooms v. Rust, Id., 231; Schmick v. Noel, 64 Texas, 406; Hamburg v. Wood, 66 Texas, 168.

There are exceptions to this rule where the question of fraud or a fraudulent conspiracy constitutes an element in the case, but there is nothing in the present case which takes it out of the operation of the general rule.

The evidence with respect to the treatment of the plaintiff by defendant B. M. Beville was, as the case is presented in the record, inadmissible. If the suit had been instituted for and appropriate allegations had sought the cancellation of the conveyance upon the ground of false promises and deception upon the part of defendants to provide a home for and kindly treat the plaintiff in consideration of the deed, which promises had been violated, and by reason of which she had been overreached and imposed upon, this in connection with the alleged mental incapacity of the plaintiff might have laid the foundation for the introduction of such testimony in support of these or kindred averments, but as far as we can ascertain from the proof the ground relied on to rescind the conveyance was the mental incapacity of the plaintiff at the time of the execution of the same, and such being the case it was obviously an inquiry not pertinent or germane what may have been the treatment of plaintiff by defendant Beville subsequent to the deed, unless this treatment became an issue in the cause by reason of the fact that it constituted in part a consideration for the conveyance. It not being shown that the deed was executed upon such consideration, it is clear that the facts testified to were irrelevant, and being of that character tending to excite indignation against defendant and sympathy for plaintiff, it was necessarily prejudicial to the former.

The deed was in form a perfect legal conveyance to defendant Clara Beville, and it is not believed that the conduct detailed by the witness towards her of the grantee's husband, however reprehensible morally, not ratified by her and of which she is not shown to have any knowledge or connection, could affect her legal rights. We do not think the evidence was admissible as the pleadings were formed.

· These views apply also to the testimony of the witnesses R. H. Smith and Trenchard, to the effect that they had heard R. M. Beville state to ·Mrs. Anna Jones, the plaintiff, that "he and Newton were too sharp for ·her," referring to the manner in which the deed was obtained, it ·is to be presumed. It is not pretended that Mrs. Beville, the grantee in the deed, was present or knew of these statements in one instance. In the other it does appear that she was in the house, passing from room to room, when Beville and Mrs. Jones were having the conversation referred to, and that their tone of voice was loud enough to be heard over the house. This testimony can scarcely be said to be sufficient as tending to support the alleged mental weakness of plaintiff. It might, as before stated, in a proper case have been admissible as a fact or circumstance, if otherwise sufficient, to bind Mrs. B., as tending to show fraud, undue influence, imposition, or that plaintiff had been deceived and overreached. ·But even then it should have been made to appear that the grantee had knowledge of it, was party to it, or was so circumstanced as required some denial from her.

It is assigned as error that the court charged the jury that "mere mental weakness of Mrs. Anna Jones is not sufficient to avoid the deed or authorize you to regard it as not binding upon her if such weakness does not amount to an imbecility to comprehend and understand the terms of the deed, unless it is accompanied by evidence of imposition or undue influence."

The only evidence as to the mental incapacity of the plaintiff was, as stated, that for several months "after the death of her husband, in the summer of 1879, she was afflicted with what is termed 'hypo,'" and "imagined she would die soon," and that "she was naturally a woman ·of weak mind, but that her mind was as good in the fall of 1879 as it ever was."

The substance of the testimony of Mrs. Clara Beville, the grantee in the deed, was "that in the fall of 1879 her husband, R. M. Beville, purchased a lot in another part of the town and they were ·preparing to build on it. Plaintiff told him if he would build on the lot on which they were then living, the lot in controversy, she would execute a deed to him for it, and that they would live together. They agreed to build on it. Newton, the notary public, was employed to prepare the conveyance. He explained and read the deed to plaintiff; who said it was all right. Newton remained a half or three-quarters of an hour.

Beville built two houses on the lot, one of which cost about $1300, and another about $400.

The parties lived peaceably together until 1883, when plaintiff and defendant Beville quarreled.

· There was evidence that Mrs. Jones stated that the notary read and explained the deed fully to her and she understood it.

Mrs. Jones resided with defendants during the time the improvements were being erected.

Such is a condensed statement of the facts upon which the foregoing instruction was predicated.

If it be conceded that there was evidence authorizing the submission of the issue of imbecility or mental weakness upon the part of plaintiff of such character as would avoid the deed, there was no "evidence of imposition or undue influence" accompanying it, and the charge was in this respect misleading. It is also otherwise defective. The utmost concession in behalf of plaintiff which the proof authorized was that she was "naturally a weak-minded woman, but her mind was as good in the fall of 1879 as it ever was." It can not be legitimately inferred from the facts that her "imbecility was of that character which rendered her incapable of understanding the deed," as stated in the charge, and this was therefore unsupported by proof.

The instruction was calculated to impress the jury with the belief that "mere mental weakness accompanied by evidence of imposition and undue influence" would be sufficient to vacate the deed whether the evidence established these facts or not. "Mere mental weakness" alone would not have that effect, and in this case there was no evidence whatever of imposition or undue influence.

The mere fact of plaintiff's weakness of mind or old age would not incapacitate her from conveying her property. Stone v. Wilbern, 83 Ill., 107.

In order to avoid a deed on the ground of undue influence it must be shown that the influence existed and was exercised for an undue and disadvantageous purpose. That the influence existed may be inferred from the relative or actual position of the parties. In the case of a gift from the child to the parent undue influence may be inferred from the relation itself, but never when the gift is from the parent to the child, and no suspicion whatever attaches to the latter. But there is no doubt that upon proof of the actual exercise of undue influence it may be set aside. The existence of undue influence and its exercise must concur to produce the effect of avoidance. Millican v. Millican, 24 Texas, 445.

These elements were not developed by the proof, and the charge we think was error.

That the plaintiff's advanced age and her weak understanding at the time of the execution of the conveyance may be considered in estimating the fairness of the transaction where there is evidence of imposition, overreaching, or fraud, we think there is no doubt. Millican v. Millican, *supra.* Such is not the case before us.

With respect to the claim of appellee that the deed and its contents were not read and explained to her by the officer, it is proper to say that it is only in cases of the execution of conveyances by married women that

he is required to explain the contents of the deed. In a case like the present his duty is performed under the law when he certifies to and takes the acknowledgment, as in the case of an ordinary conveyance. And although not a part of his duty so to do, it would be eminently proper, where the grantor is known to him to be illiterate, aged, or weak mentally, that he should read or explain the contents of the instrument so that it may be understood by the party executing it.

The fifth assignment is that the court erred in allowing counsel for plaintiff in his closing argument before the jury to use the following language: "The dark and damnable trickery of this man Beville is further shown to you because he refuses to come on the witness stand and testify The Bevilles enticed this old lady over to Mrs. Newton's and decoyed her into making the statement to Mrs. Newton for the purpose of manufacturing more evidence. They found they had not sufficiently bound this gray-haired woman in making this deed by taking advantage of her dejection, in her hour of distress, in the hour of her mourning, but they now beat her, abuse her, and lock her out at night and curse her and threaten her into submission. Not more than two months since these defendants threw out of their house the old bureau and bedstead that belonged to plaintiff—those articles of furniture around which the toddling infancy of the defendant was spent. The Odd Fellows come to her relief, and that honorable and magnanimous order, endeared to so many of us, now ask you to restore this property to this old woman." There being no evidence or remarks of opposing counsel to justify such.

Such are the recitals contained in the bill of exceptions.

Although the most liberal construction has and should be indulged in support of the right of counsel in the discussion of facts before the jury—and the rule is not to reverse a cause on this ground unless there is a palpable abuse of the right and the case exceptional—we think it would be pressing the rule beyond its legitimate limits under this assignment, supported by the record, to permit the judgment to stand. T. & St. L. Ry. v. Jarrell, 60 Texas, 267; Willis v. McNeil, 57 Texas, 465.

The language which has been heretofore repeatedly disapproved by the Supreme Court was perhaps less objectionable than that quoted. Though justifying it, the appellee admits it to be "strong." No comment which we might offer could make its impropriety more obvious than does the reproduction of the language itself. If there was no other error in the record this assignment ought to be sustained.

For the errors mentioned we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 28, 1889.