**GRAY et al. v. ALLEN et al. (No. 6773.)***

(Court of Civil Appeals of Texas. San Antonio. June 14, 1922. Rehearing Denied June 28, 1922.)

**1. Contracts &#9758;92—"Mental capacity" defined.**

The general definition of the term "mental capacity" seems to contemplate the ability to understand the nature and effect of the act in which the person is engaged and the business he is transacting (citing Words and Phrases, First Series, Mental Capacity).

**2. Cancellation of instruments &#9758;51 — Only general definition as to mental capacity should be given in instruction in suit to cancel.**

In an action to cancel a deed for mental incapacity, the court should not lay down anything but a general rule for the guidance of the jury in defining mental capacity, and court properly refused to instruct that mere mental weakness alone would not amount to mental incapacity.

**3. Deeds &#9758;68(1½)—Mere mental weakness does not incapacitate to execute.**

Mere mental weakness does not of itself incapacitate a person to execute a valid deed.

**4. Cancellation of instruments &#9758;51—Instruction as to mental capacity held erroneous.**

In action to cancel deed for mental incapacity, it was erroneous to instruct that the term

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction October 11, 1922.

"mental capacity" means "that the party had sufficient memory, understanding and capacity to know and understand what property he had, the purpose in view in making deed to the same, and the effect that the execution of the deed would have with reference to his rights to said property."

**5. Deeds ⊝68(1½)—Memory not essential element of capacity to convey.**

Memory is not an essential element of capacity to convey property, nor is it essential that the grantor have a full knowledge or understanding of what his entire estate consists, it being sufficient that he understands the nature and effect of his deed with reference to the particular property sought to be conveyed.

**6. Witnesses ⊝139(1)—Testimony held within rule against admission of evidence of conversations with deceased.**

In an action by heirs to cancel a deed for mental incapacity, testimony of one of the plaintiffs as to peculiar conduct of deceased, evidenced by the words of the latter on the occasion of the execution of the deed, was offensive to the rule against interested persons recalling conversations with others, since deceased.

**7. Equity ⊝65(1)—Plaintiffs must come with clean hands.**

A suit to cancel a deed is a proceeding in equity, and those seeking relief must come with clean hands.

**8. Cancellation of instruments ⊝59—Innocent purchaser should be reimbursed for amount paid in suit to cancel for mental incapacity.**

In avoiding a deed conveying property at the suit of the heirs of the maker and against a purchaser, innocent of the fact of insanity of the maker, and without fraud, the purchaser should be reimbursed for the amount paid for the conveyance.

**9. Witnesses ⊝139(1)—Testimony held within rule against conversations with deceased persons.**

Testimony of party, in suit by heirs to avoid a deed of decedent for fraud, as to words, acts, and conduct of decedent concerning the execution of the deed was inadmissible, as offensive to the rule against the recalling of conversations with persons, since deceased, under Rev. St. art. 3960.

**10. Estoppel ⊝31—Heir present at execution of deed estopped to claim mental incapacity of decedent.**

In action by heirs to avoid a deed of decedent on the ground of mental incapacity, defendant should be permitted to plead and prove that one of the plaintiffs was present at the time of the execution of the deed and signed it as a witness and is estopped to profit by the alleged invalidity of the deed.

**11. Judgment ⊝710 — Judgment canceling deed for mental incapacity held not adjudication as to one holding mortgage.**

A judgment in a suit to cancel a deed for mental incapacity of decedent was not an adjudication as to the rights of one holding a deed of trust and note executed by the grantee, where she was not a party to the suit, and the validity of the note and deed of trust were not directly questioned.

**12. Mortgages ⊝154(3)—Possession of grantor did not serve as notice to subsequent mortgagee of infirmities in deed.**

Possession of grantor in a recorded deed did not serve as notice to subsequent mortgagee, of the fact that the grantor had been defrauded, or affect such mortgagee's status as an innocent purchaser.

On Motion for Rehearing.

**13. Cancellation of instruments ⊝39—Estoppel ⊝110—Estoppel and claim for reimbursement must be pleaded.**

In an action by heirs to avoid a deed of decedent for mental incapacity, matters of estoppel and claims for reimbursement should be pleaded by defendant.

**14. Appeal and error ⊝754(1)—Objections to evidence waived by not being made the subject of assignments of error.**

Where a party objected at different times to the admission of evidence as to a certain matter, and reserved their exceptions in bills appearing in the transcript, but some of those bills were not made the subjects of assignments of error brought forward in the brief, all objections to the admission of such evidence were waived.

Appeal from District Court, Medina County; R. H. Burney, Judge.

Suit by Will Allen, administrator, and others, against Sallie Maverick Gray and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Briscoe & Morris, of Devine, and Dilworth & Marshall and Hertzberg, Kercheville & Thomson, all of San Antonio, for appellants.

V. H. Blocker, of Hondo, D. C. Brown, of Devine, and Davis & Long, of San Antonio, for appellees.

SMITH, J. On February 3, 1917, Andrew P. Allen conveyed certain real property, situated in Medina county, to Mack Kercheville. The conveyance was made by a general warranty deed, in which the consideration was recited to be $7,000 in cash. On February 13, 1917, Kercheville executed his note, payable in 3 years, to Harry Hertzberg, for $2,500, and on the same day executed a deed of trust conveying the land to Andrew Dilworth, as trustee for the benefit of Hertzberg, to secure the payment of the note. On February 19, 1917, Hertzberg assigned this note to Mrs. Sallie Maverick Gray, for its face value, which was paid over to Kercheville.

On April 13, 1918, Andrew P. Allen died intestate, and three years later his heirs at law, including his brother, Will Allen, brought this suit against Dilworth, Hertz-

berg, and Mrs. Gray to cancel the note and deed of trust mentioned, and to remove cloud from title. The deed from Andrew P. Allen to Mack Kercheville was canceled on April 13, 1920, in a suit brought by Allen's heirs for that purpose, against the administrator of Mack Kercheville, then deceased. Mrs. Gray was not a party to that suit, however.

As grounds for cancellation of the note and deed of trust, the plaintiffs in the instant suit alleged that Mack Kercheville, while acting in the capacity of friend and attorney for A. P. Allen, falsely represented to Allen that it was necessary that he convey the property to Kercheville in order that the latter might conserve and protect the estate of Allen; that at the time of the conveyance Allen was of unsound mind, was incapable of knowing what he was doing, and incompetent to transact business; and that, with full knowledge of Allen's condition, Kercheville induced him to make the conveyance for the purposes of defrauding Allen and his heirs out of the lands, and incumbering and conveying the same to an innocent purchaser; that in pursuance of this design Kercheville, besides incumbering the land with the note and deed of trust described, also conveyed the same to Adams Company, merchants at Devine, for a consideration of $4,600, which conveyance was canceled by judgment at the same time of the cancellation of the deed to Kercheville; that Kercheville paid Allen no consideration for the conveyance to him; that Andrew P. Allen and his brother resided on and had possession of the land, asserting the title thereto, up to the time of Andrew P. Allen's death; and that Will Allen continued in such possession until December 31, 1919, when he was ousted by writ of sequestration issued at the instance of Adams Company; that because of the fraud of Kercheville, and the mental incapacity of Andrew P. Allen, the note and deed of trust were void; and that all the defendant had actual and constructive notice of the vices rendering the instruments void.

The defendants denied these allegations, and specially answered that the deed from Andrew P. Allen to Kercheville was witnessed by Will Allen, who was thereby estopped from now profiting by the claim based on his brother's alleged insanity. Mrs. Gray also presented a cross-action and sought to recover the amount of her note and to foreclose the deed of trust lien, alleging that she acquired the same before maturity, for value, and without notice of the alleged infirmities thereof. The plaintiffs, by supplemental petition, excepted to the plea of estoppel, reiterated the existence of notice to the defendants, and specially pleaded the judgment in the Adams Company suit as a foreclosure of the rights of Mrs. Gray, who held under the Kercheville title.

The cause was submitted to a jury upon special issues, in response to which they found (a) that Andrew P. Allen did not have "sufficient mental capacity" to make and execute the deed to Kercheville; (b) that Kercheville represented to Allen that it was necessary that the latter execute the deed "so as to protect and conserve" his estate; (c) that Kercheville made the representation "for the fraudulent purpose of inducing" Allen to execute the deed; and (d) that Kercheville persuaded and induced Allen to execute the deed for the purpose of defrauding Allen out of the property and incumbering the same. Upon these findings, the court below rendered judgment canceling the note and deed of trust, and against Mrs. Gray on her cross-action. It should be stated here that Mack Kercheville died prior to the institution of the Adams Company suit, and of this suit.

In submitting the issue of Andrew P. Allen's mental capacity to make the deed to Kercheville, the trial court instructed the jury that the term "mental capacity" as there used means "that the party had sufficient memory, understanding, and capacity to know and understand what property he had, the purpose in view in making the deed to the same, and the effect that the execution of the deed would have with reference to his rights to said property." Appellants objected to this definition as being "more onerous than is required or necessary for a person to have sufficient mental capacity to make a deed, and in failing to state to the jury in said definition that mere mental weakness is not in itself sufficient to constitute mental incapacity," and requested a special charge supplying this omission, which was refused. Appellants alleged in their petition that Andrew P. Allen, at the time of executing the deed in question, "was a man of unsound mind and wholly incapable of knowing what he was doing, and wholly incompetent to transact any business whatever," that he was then "a non compos mentis," and "wholly incapable of executing said deed."

[1-5] The evidences by which the mental capacity of persons are determined are so varied and complex, and the degrees of such capacity are so numerous, that no specific or circumstantial definition of the term may be given with any accuracy. For that reason, it is doubtful if a court may properly in any given case lay down any but a general rule for the guidance of a jury to whom the issue is submitted. The general definition of the term "mental capacity" seems to contemplate the ability to understand the nature and effect of the act in which a person is engaged and the business he is transacting. R. C. L. p. 591; 5 Words and Phrases, First Series, p. 4475. And in submitting the issue to a jury, the better practice unquestionably is to instruct the jury in such general terms, for, by going beyond the general definition, the court may very easily offend the rule

against a charge upon the weight of evidence, or the rule against singling out and giving undue prominence to a particular phase of the question. We think the charge requested by appellants, that mere mental weakness alone would not amount to mental incapacity, would have so offended. It is true that mere mental weakness does not of itself incapacitate a person (Beville v. Jones, 74 Tex. 148, 11 S. W. 1128), yet to so instruct the jury in this case would have had the effect of unduly stressing a single element of mental incapacity, and would in a sense have been upon the weight of the testimony, and for these reasons was objectionable. For the same reasons it may be said that the court's definition of the phrase was objectionable. The definition went beyond the ordinary elements of mental capacity required to give effect to the act of an individual in doing a particular thing. Here it was sought to set aside a deed as being void because, at the time of its execution, the grantor had not sufficient mental capacity to understand the nature and effect of his act in executing that instrument. Under the court's instruction, the jury were required, not merely to find that Allen understood the nature and effect of this particular act, but that he had memory, understanding, and capacity, and that all these faculties were sufficiently active in him to enable him to know, not only the nature and effect of his act in executing the deed, but to also know and understand what property he had, the purpose he had in view in making the deed, and the effect its execution would have with reference to his rights to the property. We think the charge is subject to the objections made.

Memory, for instance, is not an essential element of capacity to convey property, nor is it essential that the grantor have a full knowledge and understanding of what his entire estate consists, as the jury might infer from the court's charge here. These elements, it is true, are essential to constitute capacity to make a will, but they are not essential in order to give validity to a conveyance of particular property. It is sufficient if the grantor understand the nature and effect of his deed with reference to the particular property sought to be conveyed, and we think that should have been the extent of the court's instruction to the jury in this case. It may be that, when the legal, or any analytical mind, carefully scrutinizes and weighs the definition given by the court, it is found to mean but little more than the general definition we have mentioned, but it is problematical if a jury of laymen would so analyze the charge. We may say that the evidence in this case preponderates against the contention that Andrew Allen was insane, or that he was mentally incapacitated to effectually bind himself in the deed to Mack Kercheville. Some of his doctors, who were in a position to better know his condition, testified that he was sane, and negatived the idea of incapacity, and the notary taking his acknowledgment, and whose testimony is entitled to particular consideration, could see nothing in his conduct at the time of executing the deed which indicated incompetency.

[6] Will Allen, Andrew's brother, testified to peculiar conduct evidenced by the words of the latter on the occasion of the execution of the deed, but this testimony was clearly offensive to the rule against interested persons recalling conversations with others, since deceased, and even if it was considered, is entitled to but little probative force, coming from a witness so peculiarly interested in the fact thereby sought to be established. This witness was a brother of Andrew Allen, on whose bounty he subsisted, and to whom he was closer, by intimate association, than was any other person. By his own contentions he was present when Andrew executed the deed to Mack Kercheville, knew the purpose of the transaction, heard the conversation between his brother and Kercheville leading up to the execution of the instrument, and signed his name as a witness to the deed. He now contends that his brother was insane at the time, and that his brother's conduct at the moment, and his prior conduct, of all of which he had full knowledge, convinced him of his brother's insanity; that he knew full well that his brother was insane at the moment he executed the deed; and yet in spite of this knowledge he stood by and saw, and aided, and acquiesced in what he now contends was a fraud upon his demented brother, and seeks to profit by this fraud, and recover for himself the very property conveyed in the deed he helped to make. Of course these considerations go to the credibility of this witness and the weight to be given by the jury to his evidence, rather than to the form of the charge complained of, but we see no reason why we should close our eyes to them while determining the probable effect of the erroneous charge upon the jury. It may be that, under the more general definition, the jury would have found that Andrew P. Allen did have sufficient mental capacity to make the deed in question, whereas, they were unable to find that his capacity measured up to the higher and erroneous standard fixed in the definition actually given. The error, then, was material, and cannot be disregarded. Appellants' first assignment of error, complaining of the refusal of the requested charge, will be overruled, but the second assignment, complaining of the definition of "mental capacity," must be sustained.

[7, 8] There was evidence tending to show that the money realized from the note executed by Mack Kercheville in favor of Hertzberg, and by the latter transferred to Mrs. Gray, or at least a portion of it, was appropriated to the use and benefit of An-

drew and Will Allen the former being the grantor. This is a proceeding in equity, and those seeking relief therein must come with clean hands in order to receive it. The inflexible rule is that, in avoiding a deed conveying property, at the suit of the heirs of the maker and against a purchaser innocent of the fact of insanity of the maker and without fraud, the purchaser should be reimbursed for the amount paid for the conveyance. Pearson v. Cox, 71 Tex. 246, 9 S. W. 124, 10 Am. St. Rep. 740. We see no reason why this rule should not be extended to Mrs. Gray, who purchased the note and deed of trust lien involved, paying face value therefor, the proceeds of which went to the use and benefit of the grantor. The trial court found as a fact that Mrs Gray had no actual notice of the alleged insanity of Andrew Allen, or of Kercheville's alleged fraud.

[9] Will Allen was permitted to testify to words, acts, and conduct of his brother, Andrew, now deceased, concerning the execution of the deed to Mack Kercheville. Will Allen is a party to the suit, seeking to cancel the deed of trust and note. We think this testimony was clearly inadmissible upon the question of fraud, as well as upon the question of insanity. Article 3960, R. S.; Holland v. Nimitz (Tex. Com. App.) 232 S. W. 298; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586.

[10] Appellants charged that, by reason of Will Allen's conduct at the time of the execution of the deed to Kercheville, and of signing that deed as a witness, he is now estopped to profit by the alleged invalidity of the deed, but those allegations were stricken out upon exception. Upon that point Will Allen testified that he permitted his brother to execute the deed, and signed it as a witness, knowing that his brother was insane at the time, because "we couldn't get any credit anywhere, any help, that is provisions, we couldn't handle our farm, we couldn't handle anything we had, and in the condition he was in none of those merchants down there would credit us. That is why Mack Kercheville had that deed. I was living on my brother's property, living with him." We think it proper that appellant be permitted to plead and prove the facts of the matter as constituting equitable estoppel.

[11] It appears that, in a former suit, to which Mrs. Gray was not a party, the deed from Mack Kercheville was canceled by a final judgment. Appellees contend that this judgment was an adjudication of Mrs. Gray's rights under the deed of trust and note held by her, by which she was precluded. The trial court, however, held against appellees' contention, and the latter have cross-assigned error thereon. As stated, Mrs. Gray was not a party to the former suit, nor was the validity of the note and deed of trust directly questioned in that suit, or affected by the judgment therein. This being true, Mrs.

Gray was not precluded, and the trial court correctly so held.

[12] The court below found that there was no evidence that Mrs. Gray had actual notice of Andrew Allen's insanity at the time of the execution by Mack Kercheville of the note and deed of trust to Harry Hertzberg, which were purchased by Mrs. Gray, and which are here sought to be canceled because of the alleged fraud of Mack Kercheville, and the alleged insanity of Andrew Allen. The court concluded, as a matter of law, however, that Mrs. Gray had constructive notice of the alleged infirmities of Andrew Allen's deed, by reason of the fact that Andrew and Will Allen were in actual possession of the land involved at the time of the transfer of the note and lien to Mrs. Gray. In this connection, it should be recalled that Andrew and Will Allen were bachelor brothers, living together, "batching" it, on the land, which was owned by Andrew, and that they remained in possession after the conveyance to Kercheville, and were in such possession when Mrs. Gray purchased the note and lien. The deed from Allen to Kercheville was on record when Mrs. Gray purchased the note and lien. This being true, the possession of the grantor did not serve as notice to Mrs. Gray of the infirmities in the deed, or affect her status as an innocent purchaser, in so far as fraud is concerned. His possession merely had the effect of referring her to his deed, which was of record, and purported to dispose of all his title to the property, and she was warranted in assuming, without further inquiry, that his continued possession was by sufferance of his grantee. Harris v. Hamilton (Tex. Com. App.) 221 S. W. 273.

The conclusions we have reached give the case this status: If the insanity or mental incapacity of Andrew Allen is established, the effect will be to avoid the deed from him to Kercheville, as well as the deed of trust and note, without reference to the question of notice, subject, however, to estoppel as to Will Allen, and to the right of Mrs. Gray to reimbursements from all the appellees. The question of fraud may be said to be eliminated from the case, in so far as it may affect Mrs. Gray, since the court found there was no actual notice, and the law, when applied to the undisputed facts, declares there was no constructive notice to Mrs. Gray.

Appellant challenges the sufficiency of the evidence to establish Andrew Allen's incapacity. It is true, perhaps, that the preponderance of the evidence was against the jury's finding on that issue, especially when the improper testimony of Will Allen is eliminated, but we cannot say the evidence was not such as to properly take the issue to the jury.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[13, 14] Appellee insists that appellants did not preserve the record in the court below in such manner as to entitle them to complain in this court of the matters discussed in the original opinion. This is probably true as to some of appellants' complaints, but we felt it our duty to express our views upon the law of those points, for the benefit of the court below upon another trial, and without reference to defective preservation or presentation of those points here. The matter of estoppel and the claim for reimbursements were not, but of course should have been, properly pleaded in the trial court, and the assignments based thereon were considered, not for the purpose of reversal, but only for the purpose of discussing them in view of another trial, in which the court below should be guided by the pleadings and evidence then before it. Appellees also contend that appellant cannot here complain of the admission of Will Allen's testimony of certain conduct, transactions, and conversations of Andrew Allen, now deceased, because the record shows the admission of similar testimony of the same witness, without objection from appellants. It is true that this witness did testify to other facts which were more or less related to the facts embraced in his testimony of which appellants complain in their brief. The record shows that, while appellants objected at the time to the admission of all of this testimony, and reserved their exceptions in bills appearing in the transcript, some of those bills are not made the subject of assignments of error brought forward in appellants' brief. By their failure to present and urge these assignments in this court, appellants of course waived their objections to the admission of the testimony embraced in those assignments, and that testimony should be given the same force in this court as should be given it if it had been admitted without objection. So, if the disposition of this appeal depended upon the assignment complaining of the admission of the testimony of Will Allen embraced in such assignment, the judgment would be affirmed if it appeared that other testimony to the same effect had been admitted without objection urged here. As the disposition of the appeal was not dependent upon this assignment, however, it is unnecessary to determine the similarity of the testimony, admitted without objection, to that admitted over objection. We will simply say that, in our opinion, the whole of the testimony of Will Allen, in which he recalled the details of the conduct and conversations of, and transactions with, Andrew Allen, are clearly inhibited by article 3690, and upon proper objection should be excluded, if again offered.

We find it proper to withdraw the statement in the original opinion that the evidence conclusively shows want of constructive notice to Mrs. Gray, of the alleged vices in the conveyances attacked by appellees. There appears to be some confusion with reference to the dates of the transactions, and of the filing for record of the conveyances, and we prefer to relegate the issues thereof to the trial court for determination from the evidence upon another trial.

The motion for rehearing is overruled.